# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **IN RE:** | § | |
| **RAPID-TORC, INC.,** | § | **Civil Action No. 4:15cv0377** |
| | § | |
| **Debtor.** | § | |
| | § | **Bankruptcy Case No. 12bk39217** |
| **DYNAMIC TOOLS, INC.** | § | |
| **APPELLANT** | § | |

## DYNAMIC TOOLS, INC., AND HYTORC, A DIVISION OF UNEX CORPORATION, BRIEF IN SUPPORT OF APPEAL FROM THE BANKRUPTCY COURT'S JANUARY 6, 2015 AMENDED MEMORANDUM OPINION

HOOVER SLOVACEK LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile: 713.977.5395

&

PASHMAN STEIN, PC
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Tel: 201-488-8200

*Attorneys for Dynamic Tools, Inc., and HYTORC, a Division of Unex Corp.*

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}

## Corporate Disclosure Statement

Unex Corporation is the ultimate parent corporation for both Dynamic Tools, Inc. and HYTORC. No publicly traded corporation owns 10% or more of Unex's stock.

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES PRESENTED ........................................................3

STATEMENT OF THE CASE ...................................................................... 5

    A. THE PARTIES ..................................................................... 5

    B. RTI'S BANKRUPTCY ........................................................... 6

    C. HYTORC'S CLAIMS AGAINST TRIAD
       AND NAZARETH ............................................................. 12

SUMMARY OF THE ARGUMENT ........................................................... 22

ARGUMENT ...................................................................................... 24

    I.    THERE IS NO EVIDENCE IN THE RECORD THAT
         HYTORC EITHER ALLEGED MISAPPROPRIATION BY
         RTI OR SHOULD HAVE KNOWN OF ANY UNALLEGED
         MISAPPROPRIATION ........................................................ 24

         A.    HYTORC DID NOT ALLEGE, AND ATLAS
              PROVIDED NO EVIDENCE OF, RITI'S
              MISAPPROPRIATION OF HYTORC'S
              DESIGNS ............................................................ 24

         B.    HYTORC DID NOT KNOW, NOR SHOULD IT
              HAVE KNOWN, OF RIT'S PURPORTED
              REPRESENTATION ........................................... 28

    II.   THE BANKRUPTCY COURT'S CONCLUSIONS OF
         LAW REGARDING ITS JURISDICTION AND THE
         APPLICABILITY OF JUDICIAL ESTOPPEL WERE
         IN ERROR ................................................................ 33

         A.    HYTORC'S CLAIMS AGAINST TRIAD AND
              NAZARETH DO NOT RELATE TO RTI'S
              BANKRUPTCY PLAN AND ARE NOT SUBJECT
              TO THE BANKRUPTCY COURT'S
              JURISDICTION ................................................... 34

B.   THE COURT'S JUDICIAL ESTOPPEL ANALYSIS
WAS FLAWED AND BASED ON CLEARLY
ERRONEOUS FINDINGS OF FACT ................................... 41

CONCLUSION ......................................................................... 49

# TABLE OF AUTHORITIES

**PAGE**

*Arnold v. Garlock, Inc.,*
278 F.3d 426 (5th Cir. 2001) ................................ ............................... 35

*ASARCO LLC v. Americas Mining Corp.,*
396 B.R. 278 (S.D. Tex. 2008) ................................................................ 45

*Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's
Stores of Texas, Inc.),*
266 F.3d 388 (5th Cir. 2001) ................................................... .. 34, 36

*Bankruptcy Trading & Inves., L.L.C. v. Chiron Financial Group, Inc.,*
*342 B.R. 474 (S.D. Tex. 2006)* ............................................... ....... 35

*Beall v. United States,*
467 F.3d 864 (5th Cir. 2006) ................................................... ....... 46

*CoreStates Bank, N.A. v. Huls America, Inc.,*
176 F.3d 187 (3d Cir. 1990) ................................................... 39

*Eubanks v. FDIC,*
977 F.2d 166 (5th Cir. 1992) ............................................... .. 43,44

*Fairfield Communities v. Daleske (In re Fairfield Communities),*
142 F.3d 1093 (8th Cir. 1998) ............................................... ....... 36

*Feld v. Zale Corp. (In re Zale Corp.),*
62 F.3d 746 (5th Cir. 1995) ............................................... ....... 39

*Gilbane Bldg. Co. v. Air Sys. (In re Encompass Servs. Corp.),*
337 B.R. 864 (Bankr. S.D. Tex. 2006) ....................................... 35

*Hall v. Nat'l Gypsum Co.,*
105 F.3d 225 (5th Cir. 1997) ............................................... ....... 39

*In re Coho Res., Inc.,*
345 F.3d 338 (5th Cir. 2003) ............................................... ....... 39

*In re Delta Starr Broadcasting, L.L.C.,*
422 Fed.Appx. 362 (5th Cir. 2011) ....................................... ....... 45

*In re Encompass Servs. Corp.*,
  337 B.R. at 871 .............................................................................. .. 36,37

*In re Enron Corp. Sec, Derivative & ERISA Litig.*,
  2005 U.S. Dist. LEXIS 34032, 2005 WL 1745471
  (S.D. Tex. July 25, 2005) ......................................................... ... 34,36

*In re Howe*,
  913 F.2d 1138 (5th Cir. 1990) ................................................ ....... 45

*In re Johns-Manville Corp.*,
  7 F.3d 32 (2d Cir. 1993) ......................................................... ....... 36

*In re Pac. Lumber Co.*,
  584 F.3d 229 (5th Cir. 2009) .................................................. ....... 38

*In re Seven Seas Petroleum Inc.*,
  522 F.3d 575 (5th Cir. 2008) .................................................. ........ 40

*In re Skuna River Lumber*,
  564 F.3d 353 (5th Cir. 2009) .................................................. ........ 41

*In re Southmark Corp.*,
  163 F.3d 925 (5th Cir. 1999) .................................................. ........ 43

*In re Texas Wyoming Drilling, Inc.*,
  422 B.R. 612 (N.D. Tx. 2010) ................................................. ........ 45

*In re U.S. Brass*,
  301 F.3d 296 (5th Cir. 2002) ............................................34,35,36

*In re Zale Corp.*,
  62 F.3d at 753 ................................................................ ........39,40,41

*Matter of Edgeworth*,
  993 F.2d 51 (5th Cir. 1993) .................................................. ........ 39

*Russell v. SunAmerica Securities, Inc.*,
  962 F.2d 1169 (5th Cir. 1992) ............................................... ....... 43,44

*Swate v. Hartwell*,
  99 F.3d 1282 (5th Cir. 1996) ................................................. ........ 43

*United States ex rel. Am. Bank v. CIT Constr. Inc.*,
  944 F.2d 253 (5th Cir. 1991) ................................................. ........ 46

## <u>RULES AND STATUTES</u>

11 U.S.C. §363 ................................................................ ...3, 15

28 U.S.C. §157(b)(2) ........................................................ .....37, 38

28 U.S.C. §158(a)(1) .................................................... ........2

28 U.S.C. §1334(b) ........................................................37

Federal Rule of Bankruptcy Procedure 9033 .................................2

Section 524 of the Bankruptcy Code ................................. ........40

## Jurisdictional Statement

On January 6, 2015, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") filed an Amended Memorandum Opinion in which the Bankruptcy Court "Ordered that Atlas' motion is Granted and Dynamic/HYTORC's motion is denied" (the "Memorandum Opinion"). A1258-97. The Bankruptcy Court did not file a separate Order. On January 19, 2015, Dynamic Tools, Inc. and HYTORC (collectively, "HYTORC") filed a Motion to Reconsider the Memorandum Opinion, and, on February 9, 2015, while that motion was pending, filed a Notice of Appeal. A1298-1309; 1358-61.

Pursuant to Atlas Copco Tools and Assembly Systems, LLC's ("Atlas") Emergency Motion for Entry of Final Order, on February 19, 2015, the Bankruptcy Court entered a final order for the relief granted in the Memorandum Opinion. A1408-09. On March 5, 2015, HYTORC filed an Amended Notice of Appeal to include the Bankruptcy Court's February 19, 2015 Order. A1410-13.

Accordingly, because this is an appeal from a final order of the Bankruptcy Court, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).[1]

## Statement of Issues Presented

1.   Whether the Bankruptcy Court has jurisdiction over HYTORC's non-bankruptcy state law claims against its suppliers Triad Tool & Die Co. ("Triad") and Nazareth Machine Works ("Nazareth") simply because Triad and Nazareth were also suppliers to debtor Rapid-Torc, Inc. ("RTI"), including the constituent issues of:

    a. Whether the Bankruptcy Court erred as a matter of law when it concluded that it had exclusive jurisdiction over HYTORC's state law claims;

---

[1] Because the Bankruptcy Court stated that the Memorandum Opinion "should be considered *either* final rulings on the motions *or* as recommendations to the district court," HYTORC also filed objections pursuant to Federal Rule of Bankruptcy Procedure 9033 to preserve its rights. A1260; A1329-57. Although the parties have repeatedly raised this ambiguity, and the resulting need for HYTORC to pursue parallel challenges to the Memorandum Opinion, with the Bankruptcy Court, the Bankruptcy Court has declined to address whether HYTORC's appeal should proceed pursuant to Rule 9033 or pursuant to Part VIII of the Bankruptcy Rules. Atlas has not responded to HYTORC's Rule 9033 Objections.

b. Whether the Bankruptcy Court erred as a matter of law in granting Atlas' Motion to Enforce (1) Mediation Settlement Agreement; (2) Order Approving Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances Under 11 U.S.C. § 363; (3) Order Vacating Prior Order Dated March 18, 2013 and Authorizing Assumptions and Assignment of Executory Contracts and Unexpired Leases; and (4) Order Confirming Plan of Reorganization and Approving Adequacy of Disclosure Statement; and

c. Whether the Bankruptcy Court erred as a matter of law in denying HYTORC's Motion to Abstain on the basis of its lack of jurisdiction.

2.     Whether the Bankruptcy Court's conclusion that HYTORC's state law claims involved the parties and issues in RTI's bankruptcy proceeding was clearly erroneous because it lacked any supporting evidence, including the constituent issue of whether the underlying findings of fact were clearly erroneous due to a lack of any supporting evidence:

- "Plaintiffs allege RTI stole plaintiffs' designs and used them to order tools from Triad and Nazareth, which then filled the RTI orders, allegedly knowing that the designs originally came from Dynamic/Hytorc." A1267.

- "Dynamic/Hytorc sues Nazareth and Triad based on a dispute directly related to assets of RTI sold by order of this Court." A1268.

- "Dynamic/Hytorc discovered its alleged claims against RTI, Triad, and Nazareth pre-confirmation." *Id.*

- "On April 18, 2013, Dynamic/Hytorc knew RTI purchase orders to Nazareth and Triad were accompanied by RTI designs on which it claimed ownership." A1287.

- "[that] throughout the bankruptcy [case] Dynamic/Hytorc planned to undermine the reorganization by suing Nazareth and Triad post-confirmation on the same RTI designs used in contracts assumed by Atlas." *Id.*

- "Before May 30, 2013, the day of the Settlement Order, Dynamic/Hytorc knew it claimed ownership of the RTI designs attached to RTI purchase orders sent to Nazareth and Triad." A1292.

- "[T]hat both the bankruptcy and the subsequent state case involve the same nucleus of operative fact, namely, the effect of the bankruptcy on the ownership of RTI intellectual property which Dynamic/Hytorc now claims as its own trade secrets." *Id.*

- that "Dynamic/Hytorc knew early in the bankruptcy, months before the Settlement, [that] RTI used designs claimed by Dynamic to place purchase orders with its suppliers . . . ." A1294.

- that "Dynamic/Hytorc agreed to the settlement and reorganization knowing it had claims against the RTI

intellectual property which it intended to assert post-confirmation against RTI's suppliers." *Id.*

3.     Whether the Bankruptcy Court erred as a matter of law when it *sua sponte*, and without providing notice or an opportunity to be heard, considered and found that judicial estoppel applied to bar HYTORC's state law claims against Triad and Nazareth.

**Statement of the Case**

**A. THE PARTIES**

Appellant HYTORC is a division of Unex Corporation, a corporation organized under the state laws of New Jersey. A1315. HYTORC formed Dynamic to sell products on a private label basis to RTI, the debtor below. Dynamic is a New Jersey corporation. A1316.

Triad, a New Jersey corporation, is a machine shop that had been engaged by HYTORC to manufacture HYTORC-designed tools and parts. *Id.* & A1318. Nazareth, a Pennsylvania corporation, is also a machine shop that had been engaged by HYTORC to manufacture HYTORC-designed tools and parts. A1316, A1318.

The Debtor, RTI, is the Chapter 11 debtor in the case below. RTI contracted with HYTORC to purchase HYTORC-designed tools and parts. A1317.

Appellee Atlas is a Delaware limited liability company. Atlas purchased substantially all of RTI's assets in bankruptcy.

## B. RTI'S BANKRUPTCY

HYTORC is a market leader in industrial bolting tools and a leading innovator in the design and development of hydraulic torque wrenches designed to precisely set the force of fasteners such as nuts and bolts. A1316-17. On occasion HYTORC enters into "private label" agreements with other tool companies pursuant to which HYTORC licenses the tool company to market HYTORC-designed tools as their own products. In all such cases, the design remains the property of HYTORC. A1317.

In or about July 2003, HYTORC entered into a private label agreement with RTI (the "Private Label Agreement"). Under the agreement HYTORC engaged Triad and Nazareth, both of whom operate machine shops, to manufacture HYTORC-designed tools and spare parts. Triad or Nazareth delivered the completed tools

and parts to HYTORC. HYTORC then sold the tools and parts directly to RTI under license, which authorized RTI to market and sell the tools as RTI products. A1318.

HYTORC provided Triad and Nazareth with its proprietary tool designs from which they could manufacture the tools and parts; HYTORC never provided the designs to RTI, which purchased the products from HYTORC only.A1317-18. Although the Private Label Agreement itself was not memorialized in writing, every drawing entrusted to Triad and Nazareth contained the following legend:

> PROPRIETARY AND CONFIDENTIAL
>
> THIS DRAWING IS THE PROPERTY OF UNEX CORPORATION AND THE INFORMATION THEREON IS TO BE TREATED AS CONFIDENTIAL. IT IS NOT TO BE USED, COPIED, OR DISCLOSED TO OUTSIDE PARTIES WITHOUT OUR WRITTEN CONSENT

A1321. Thus, the Private Label Agreement between HYTORC and RTI did not create any relationship between RTI and the machine shops Triad and Nazareth.

Over time, RTI fell progressively behind in payments to HYTORC (well over $2 million) for the HYTORC products that RTI received and sold. A1318-19. As a result, in or about March 2011,

HYTORC stopped producing parts for RTI under the Private Label Agreement. A1319. In addition, Dynamic held over $1.2 million in inventory of unsold RTI-branded tools and spare parts. A1319. Dynamic initiated a collection action in Harris County, Texas, A1319, and on May 18, 2012, obtained a judgment against RTI for $2,634,410 for the for the tools and spare parts already delivered to RTI (the "Judgment"), A681. RTI appealed the Judgment. HYTORC now believes that around this time, RTI induced Triad and Nazareth to continue making HYTORC-designed tools and parts, and to sell those products directly to RTI.

HYTORC's judgment against RTI precipitated RTI's Chapter 11 bankruptcy filing on December 14, 2012. *See In re Rapid Torc, Inc.*, No. 12-39217, Dkt. 78 ¶ 7 (S.D. Tx. Bankr.). Initially, RTI concealed its relationship with Triad and Nazareth and failed to list them as creditors in its bankruptcy case. It was forty-six days later, on January 31, 2013, that RTI filed an amended Schedule F and for the first time listed "Nazerette Machine Works" and "Triade Tool" as creditors. A20; A22. RTI's disclosure schedules did not list any executory contracts with Triad or Nazareth, and did not list the

Private Label Agreement. Importantly, RTI affirmatively represented that it owned no intellectual property when it wrote "None" on its disclosure schedules. A42.

One week after identifying Triad and Nazareth as creditors, RTI signed an agreement with Atlas, which had been pursuing an acquisition of RTI prior to its bankruptcy, pursuant to which Atlas would purchase all of RTI's assets. *See In re Rapid Torc, Inc.*, No. 12-39217, Dkt. 78; A1068. RTI then sought emergency approval from the Bankruptcy Court to rush this agreement through even though the Asset Purchase Agreement circulated to the creditors and the Bankruptcy Court was full of material redactions, including the redaction of RTI's inventory to be sold to Atlas.[2] *Id.* Dynamic never received an un-redacted version of the Asset Purchase Agreement. *See, e.g.,* A96-102. The Bankruptcy Court approved the Asset Purchase Agreement on April 18, 2013 (the "Sale Order"), and the proceeds were deposited into RTI's counsel's trust account. A75-123.

---

[2] Notably, Schedule 4.11 to the Asset Purchase Agreement specifically stated that the trade secrets being sold did not include trade secrets licensed from any third party. A122

Further, on or about April 17, 2013, the day before the Bankruptcy Court approved the Asset Purchase Agreement through the Sale Order, RTI and HYTORC reached a mediated settlement agreement whereby, in exchange for mutual releases, RTI agreed to pay HYTORC $1.4 million from the proceeds of the asset sale and HYTORC would dismiss all pending litigation against RTI (the "Settlement Agreement"). A69. The settlement also required Atlas to purchase HYTORC's remaining $1.2 million of inventory for $900,000. The Bankruptcy Court approved the Settlement Agreement on May 30, 2013. A124.

The same day the Bankruptcy Court entered the Sale Order, the Court entered a second order authorizing Atlas to assume and be assigned certain of RTI's contracts and leases (the "Assignment Order") A70-74. Notably, just as the Asset Purchase Agreement redacted the inventory being sold, the Assignment Order did not specify what contracts Atlas was assuming. A73-74. Rather, the Assignment Order generically stated only that RTI was assigning to Atlas "purchase orders for good [sic] ordered the by [sic] Debtor in Possession and not invoiced prior to filing of the Petition in this

Case." A74 ¶ 17. The Assignment Order did not specify any purchase order or executory contracts between RTI and Triad or Nazareth. *See* A73-74.

Thus, within a few weeks of quasi-disclosing Triad and Nazareth as creditors by misspelling their names, RTI and Atlas had engineered and rushed through approval of a series of agreements purporting to dispose of substantially all of RTI's physical and intangible assets *without ever actually disclosing what those assets were.* For its part, HYTORC did not object to this lack of disclosure because it had *no reason* to suspect that there was anything relevant to HYTORC that had not been disclosed:  How could it know?  RTI i.) had affirmatively represented in its sworn schedule B that it had no intellectual property (A40); ii.) had not identified in its sworn schedule G the Private Label Agreement as a continuing license (indeed, even Atlas knew that RTI's breach of the Private Label Agreement was what had precipitated RTI's bankruptcy) (A34-37); iii) had affirmatively represented in the Asset Purchase Agreement that it did not license any intellectual property (A122 ); and iv.) had not identified any intellectual property in the Asset

Purchase Agreement, which included only generic boilerplate language. Simply put, *nothing* suggested that HYTORC's designs had ever left Triad and Nazareth's possession and were now being sold by RTI to Atlas.

On June 18, 2013, the Court approved RTI's Chapter 11 Plan (the "Confirmation Order"), which provided for the liquidation of RTI through the distribution of the sales proceeds to the creditors. A125-27.

## C. HYTORC'S CLAIMS AGAINST TRIAD AND NAZARETH

After the January 31, 2013 quasi-disclosure of Triad and Nazareth as unsecured creditors of RTI, HYTORC did question, however, why its longtime suppliers Triad and Nazareth were in business with RTI. A1319-20. HYTORC received no response. A1320. As a result of Triad and Nazareth's silence, and considering RTI's affirmative representation that it owned no intellectual property, HYTORC concluded, and indeed alleged in the New Jersey Litigation, that the only "plausible explanation for either [Triad or Nazareth] being owed money" by RTI was that, unbeknownst to HYTORC, Triad and Nazareth had continued to use HYTORC's

designs to manufacture HYTORC products for RTI after HYTORC ended the Private Label Agreement due to RTI's lack of payment. A1320. HYTORC formed the belief, and indeed has alleged, that Triad and Nazareth misappropriated HYTORC's designs so that they could continue to profit by selling HYTORC's products directly to RTI. A1320-22.

On July 18, 2013, less than six months after the disclosure of Triad and Nazareth as RTI's unsecured creditors, HYTORC and Dynamic filed suit against Triad and Nazareth in the Superior Court of New Jersey alleging misappropriation and conversion of HYTORC's intellectual property and trade secrets (the "New Jersey Litigation"). A1315-28. HYTORC is seeking damages for theft of HYTORC's trade secrets and intellectual property in connection with *Triad and Nazareth* using HYTORC's designs; HYTORC also seeks to enjoin future infringement of *HYTORC*'s designs. *Id.* Neither RTI nor Atlas is a party to the New Jersey Litigation.[3] *See id.* Moreover, HYTORC is not seeking a blanket injunction preventing Triad or

---

[3] To be clear, and particularly in light of Atlas' unsupported contentions in the Bankruptcy Court, HYTORC fully reserves its rights to pursue any and all remedies from any party once the facts and evidence warrant.

Nazareth from doing business with Atlas (as successor to RTI); instead, HYTORC seeks only to prevent Triad and Nazareth from continuing to misappropriate HYTORC's designs. *See id.*

Although HYTORC's allegations in the New Jersey Litigation had nothing to do with RTI's bankruptcy, on August 30, 2013, Triad and Nazareth removed the Complaint to the United States Bankruptcy Court for the District of New Jersey, and sought a transfer to the Bankruptcy Court for this District. A147. Before that transfer took place, on October 21, 2013, Atlas filed a motion in the Bankruptcy Court in this District seeking to enjoin the New Jersey Litigation. A141-54. Atlas's motion claimed the injunction was necessary in order to enforce the (1) Settlement Agreement; (2) Sale Order; (3) Assignment Order; and (4) Confirmation Order (the "Motion to Enforce"). *Id.*

In its Motion to Enforce, Atlas requested that the Bankruptcy Court "preclude the New Jersey Litigation from proceeding" based on two arguments. A142. First, Atlas asserted that the Mediated Settlement Agreement between RTI and HYTORC released "all those in privity with [RTI] or Atlas," which Atlas contends includes RTI's

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}                                    14

suppliers Triad and Nazareth. A149. Second, Atlas argued that it had acquired the right to use RTI's key suppliers (including Triad and Nazareth) and had assumed RTI's contracts with Triad and Nazareth, and that these rights were approved by the Bankruptcy Court. *Id.* The thrust of Atlas' assertion was that HYTORC's New Jersey Litigation interfered with its key supplier relationships.

HYTORC opposed Atlas' motion on the merits, and also argued that the Bankruptcy Court lacked jurisdiction over the issues raised in the New Jersey Litigation, which had no connection to RTI's bankruptcy. A279-318. Almost a year after filing its motion, Atlas filed a "supplement" to the motion and claimed, *for the first time*, that Atlas had purportedly acquired HYTORC's intellectual property and trade secrets in the bankruptcy pursuant to 11 U.S.C. § 363(m). A362-67. The "supplement" was filed just days before the September 15, 2014 hearing before the Bankruptcy Court, at the same time as the witness lists and exhibit lists for the hearing were being exchanged.

Atlas' new, eleventh-hour argument misconstrued HYTORC's allegations of misappropriation by Triad and Nazareth. First, Atlas

now claimed that RTI misappropriated HYTORC's designs, although there has been no explanation or evidence of when or how RTI did so when HYTORC provided Triad and Nazareth with its tool designs. A362-63. Atlas then claimed that, because RTI effectively stole HYTORC's designs, Atlas acquired those stolen designs in bankruptcy, and the Bankruptcy Court's approval of the Asset Purchase Agreement means that Atlas now owns this stolen intellectual property "free and clear of any claims or interference by" HYTORC. *Id.*

Atlas' argument is entirely fanciful and imaginary; there has been no evidence that would support these allegations. Even more importantly, these allegations were entirely new to HYTORC, which had not alleged (and had not suspected) that RTI had gained access to the confidential and proprietary tool designs that HYTORC had previously provided only to Triad and Nazareth, and which clearly bore the "PROPRIETARY AND CONFIDENTIAL" legend language quoted supra.

The Bankruptcy Court held two hearings on what were ostensibly only the jurisdictional questions. *See, e.g.,* A1051 (Atlas'

counsel discussing factors "to the jurisdiction issues we're here for today," and asking the Court to find jurisdiction); A1059 (Atlas' request that the "Court exercise jurisdiction over the New Jersey [Litigation]"). Atlas' counsel himself explained to the Court at the second hearing, on September 15, 2014, that the Bankruptcy Court was solely charged with assessing jurisdiction:

> We don't think that [the New Jersey Litigation] has merit, but what we're sure of as we stand before the Court today is that your Honor has the jurisdiction to make that determination. . . . . [As to the ultimate issue, w]e believe we have the better of that argument *but that's not what we're here to argue about today.*

A1207 (emphasis added).

At the hearings Atlas presented testimony from Atlas, Triad and Nazareth. There was no testimony supporting the material facts of Atlas' new theory, raised for the first time just days before, that HYTORC had somehow known during RTI's bankruptcy and had alleged in the New Jersey Litigation that RTI had stolen HYTORC's designs and then sold them to Atlas in the bankruptcy. There was no testimony that Triad and Nazareth had provided RTI access to or copies of HYTORC's confidential and proprietary designs. There was

no testimony that HYTORC knew or should have suspected that RTI had obtained access to or copies of or had misappropriated HYTORC's confidential and proprietary designs. And, most importantly, there was no evidence that HYTORC knew or should have known that RTI was selling HYTORC's intellectual property in the bankruptcy, either as inventory (which was redacted in the Asset Purchase Agreement) or as executory contracts with Triad and Nazareth (which were not identified in the Assignment Order). There simply was no evidence presented that Atlas had acquired HYTORC's misappropriated designs in the bankruptcy sale. Nor was there evidence that HYTORC knew of such purported transfer of its misappropriated intellectual property. As such, HYTORC unsurprisingly did not present any testimony in rebuttal; there was no evidence to rebut.

On December 31, 2014, the Bankruptcy Court issued a Memorandum Opinion, later amended on January 6, 2015. To HYTORC's great surprise, the Bankruptcy Court stated in the Memorandum Opinion that HYTORC "allege[s] RTI sole [HYTORC's] designs and used them to order tools from Triad and Nazareth,"

A1226; A1267, and that "[HYTORC] discovered its alleged claims against RTI, Triad, and Nazareth pre-confirmation," A1227; A1268. These findings were not supported with any citation to the record. As noted above, the only notion in the record supporting these findings are the totally unsubstantiated accusations in Atlas' eleventh-hour supplemental filing.

To be clear, the record is devoid of any allegation by HYTORC that RTI – as opposed to Triad and Nazareth – stole its designs. There is no evidence in the record whatsoever that HYTORC discovered, according to Atlas, RTI's supposed theft from HYTORC before confirmation of the bankruptcy plan. Based on these clearly erroneous findings of fact, the Bankruptcy Court found that it had "exclusive post-confirmation jurisdiction over the dispute between [HYTORC], Nazareth and Triad." A1268.

The Bankruptcy Court's order went further still.  The sole issue raised before it by the parties' motions was the Bankruptcy Court's jurisdiction. That notwithstanding, the Bankruptcy Court's order went on to address, *sua sponte*, the merits of the New Jersey Litigation and concluded that RTI had misappropriated HYTORC's

designs, that HYTORC knew of the misappropriation, and that Atlas had acquired HYTORC's misappropriated designs and trade secrets when it purchased RTI's assets. A1270-97.

The Bankruptcy Court found that "[o]n April 18, 2013, [HYTORC] knew RTI purchase orders to Nazareth and Triad were accompanied by RTI designs on which it claimed ownership." A1287. Based on this clearly erroneous finding of fact, which had no basis in either evidence on the record or testimony at the hearings, the Bankruptcy Court *sua sponte* found that HYTORC had acted in bad faith and that judicial estoppel therefore applied to enjoin HYTORC from challenging Atlas' right to use HYTORC's misappropriated designs and sell the resulting products. A1296-97.

HYTORC moved for reconsideration of the Memorandum Opinion. In the request for reconsideration, HYTORC pointed out that the Bankruptcy Court likely conflated invoices with purchase orders, and that such conflation led to the key erroneous finding that, "[o]n April 18, 2013, [HYTORC] knew RTI purchase orders to Nazareth and Triad were accompanies by RTI designs on which it claimed ownership . . . ." A1298-1307. That is, Triad's unsecured

proof of claim in the RTI bankruptcy case attached Triad invoices. Those Triad invoices, crucially, did not include purchase orders or drawings or anything else that might suggest the subject of the invoices were HYTORC's products. A47-68; A1300. Triad then testified at the second hearing that it received purchase orders from RTI accompanied by designs.[4] A1182.

There is simply no evidence in the record that HYTORC knew about the purchase orders, or more importantly that they were accompanied by HYTORC's designs (if they are in fact HYTORC's designs), before the Bankruptcy Court entered the Confirmation Order.[5] HYTORC noted this lack of evidence and the possibility that the Bankruptcy Court confused Triad's pre-confirmation disclosure of invoices with its post-confirmation evidence about purchase

---

[4] Even this testimony, however, establishes only that the designs were for the same kinds of tools HYTORC designed, not that they were copies of HYTORC's designs. See, e.g., A1182 (describing designs as similar but not the same); id. at A1190-94 (describing various types of tools some of which were manufactured for RTI only, and others for both HYTORC and RTI).

[5] Indeed, HYTORC noted in the very first paragraph of its Motion to Reconsider, that the very first time it ever saw these purchase orders was seven months later on November 15, 2013. A1308. Atlas did not dispute this fact in its opposition, and instead raised only frivolous arguments objecting to the admissibility of HYTORC's evidence (which evidence was only necessitated by the Bankruptcy Court making a clearly erroneous finding of fact that was unsupported by the record). A1313.

orders. A1299-1304. Nonetheless, the Bankruptcy Court denied HYTORC's motion for reconsideration without comment. A1407.

## Summary of the Argument

The only "evidence" introduced before the Bankruptcy Court that HYTORC was aware that its designs were being misappropriated was its discovery, shortly before the plan was confirmed, that Triad and Nazareth were creditors of RTI. That is it. None of RTI's disclosures described HYTORC's designs as belonging to RTI, and none of the documents incident to the sale of RTI's assets to Atlas describes any transfer of intellectual property in a manner that could possibly have alerted HYTORC to the fact that its property was purportedly being sold. The discovery that Triad and Nazareth were creditors of RTI caused HYTORC to suspect that the reason that RTI was able to continue selling tools after HYTORC cut off sales to RTI was that Triad and Nazareth had begun selling the tools directly to RTI. That would mean that Triad and Nazareth were misappropriating HYTORC's designs and that they were interfering with HYTORC's prospective economic advantage. Pursuant to this suspicion, HYTORC brought suit against Triad and

Nazareth in New Jersey state court alleging five counts based on their misappropriation of HYTORC's intellectual property (the "New Jersey Litigation").

Atlas is not a party to the New Jersey Litigation and the New Jersey Litigation has nothing to do with RTI's bankruptcy. The Bankruptcy Court nonetheless improperly assumed jurisdiction over this post-confirmation dispute between co-creditors in contravention of long-settled legal principles, and also entered a decision that went far beyond the relief sought in Atlas' motion, a decision that is unsupported by any evidence in the record. The Bankruptcy Court concluded that the New Jersey Litigation involved drawings over which that RTI claimed ownership, and that HYTORC must have known prior to confirmation of the Bankruptcy Plan that RTI claimed ownership of the designs in question. According to the Bankruptcy Court, because HYTORC knew that RTI claimed ownership of the designs, and because HYTORC waited until after confirmation of the Bankruptcy Plan in order to raise the issue, HYTORC is judicially estopped from asserting claims against Triad and Nazareth.

The Bankruptcy Court's decision effectively assigned HYTORC's intellectual property to Atlas without any notice, without a factual basis, and without any legal authority. The Bankruptcy's Court's decision is based on arguments that were never raised by the parties, purported facts that are unsupported in the record, and conclusions of law that are incorrect. Accordingly, the Bankruptcy Court's proposed findings of fact and conclusions of law are in error and should be reversed.

## Argument

### I.  There Is No Evidence In The Record That HYTORC Either Alleged Misappropriation By RTI Or Should Have Known Of Any Unalleged Misappropriation.

There is absolutely no evidence supporting the Bankruptcy Court's findings of fact regarding any purported misappropriation by RTI, and HYTORC's supposed knowledge of same. What evidence there is on this subject actually contradicts the Bankruptcy Court's findings. Accordingly, these findings are clearly erroneous and should be reversed.

A.    **HYTORC Did Not Allege, And Atlas Provided No Evidence Of, RTI's Misappropriation of HYTORC's Designs.**

The Bankruptcy Court incorrectly found that HYTORC had alleged in the New Jersey Litigation that RTI had misappropriated HYTORC's designs:

- "Plaintiffs allege RTI stole plaintiffs' designs and used them to order tools from Triad and Nazareth, which then filled the RTI orders, allegedly knowing that the designs originally came from Dynamic/Hytorc." A1267.

- "Dynamic/HYTORC seeks to enjoin Triad and Nazareth from using designs it contends belong to plaintiffs and not RTI." *Id.*

- "Dynamic/Hytorc sues Nazareth and Triad based on a dispute directly related to assets of RTI sold by order of this Court." A1268.

- "[T]he Court concludes that both the bankruptcy and the subsequent state case involve the same nucleus of operative fact, namely, the effect of the bankruptcy on the ownership of RTI intellectual property which Dynamic/Hytorc now claims as its own trade secrets." A1292.

Put simply, these findings of fact are not supported by any citations to evidence in the record because no such evidence exists.

HYTORC's New Jersey Litigation alleges only that Triad and Nazareth misappropriated and converted HYTORC's designs in order to sell HYTORC's products directly to RTI. A1320; *see also,*

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}                    25

*generally*, A1315-28. Crucially, the New Jersey Litigation does not allege that RTI misappropriated or took possession of HYTORC's designs, and certainly does not demonstrate that HYTORC had any knowledge that RTI would later purport to transfer ownership of HYTORC's designs to Atlas. Similarly, Atlas' original Motion to Enforce also does not allege, suggest or argue that HYTORC is asserting claims against RTI for misappropriating HYTORC's designs. Instead, Atlas argued only that i) HYTORC released Triad and Nazareth from all claims, known or unknown, by virtue of HYTORC's settlement with RTI (which argument the Bankruptcy Court rejected); and ii) the Bankruptcy Court's approval of Atlas' assumption of executory contracts between RTI, Triad and Nazareth precluded HYTORC's claims. A149.

It was not until a year after Atlas' motion that Atlas first suggested in its "supplement," without any factual support, that RTI had misappropriated HYTORC's designs, that those designs now belonged to Atlas by virtue of the asset sale, and that the asset sale also somehow immunized Atlas from liability for RTI's misappropriation. Dkt. 279. Atlas' entire "supplement" was based

solely on misconstructions of HYTORC's allegations against Triad and Nazareth in the New Jersey Litigation. Although its brief is devoid of any citation to the specific allegations in the Complaint, Atlas repeatedly described the New Jersey Litigation as alleging misappropriation against RTI and Atlas. A363 ("Dynamic and HyTorc [sic] contend that Rapid-Torc copied their drawings . . . ."); A364 n.2 (describing the Complaint as alleging "Rapid-Torc's misappropriation of [HYTORC's] drawings . . . ."); and A365 (stating that HYTORC alleged "that Rapid-Torc has misappropriated their drawings.").

As Atlas was well aware, and as is readily apparent on the face of HYTORC's New Jersey Complaint, HYTORC had alleged only that *Triad and Nazareth* had misappropriated HYTORC's designs. Neither Atlas nor RTI were parties to the New Jersey Litigation, and HYTORC had no reason to suspect RTI had even seen HYTORC's drawings, much less misappropriated them. In fact, once under oath, Atlas' witness admitted that Atlas did not actually know whether RTI's designs were misappropriated from HYTORC or were

even the same designs that are at issue in HYTORC's New Jersey Litigation. A1099.

Further, none of the testimony on the motion supported Atlas' fanciful mischaracterization of HYTORC's claims against Triad and Nazareth. Atlas' counsel specifically noted the lack of evidence regarding the source and nature of RTI's designs, stating that, "There may be a debate about how Rapid-Torc got its drawings. We don't think that's relevant for today." A1058. What evidence there is contradicts Atlas' contention. Atlas specifically testified that none of the intellectual property and designs it contends are at issue in the New Jersey litigation were in RTI's possession; every drawing and design was in either Triad or Nazareth's possession. A1110. Moreover, Atlas never confirmed with RTI that the drawings and designs in Triad and Nazareth's possession were actually RTI's intellectual property. *See, e.g., id.*

Accordingly, there is no evidence supporting the Bankruptcy Court's finding that HYTORC's New Jersey Litigation alleged that RTI misappropriated HYTORC's designs. When it filed its Complaint, HYTORC suspected, and alleged, only that it had

provided its designs to Triad and Nazareth and that both continued to manufacture HYTORC's tools for RTI without HYTORC's authorization, thus misappropriating, infringing and converting HYTORC's intellectual property for their own profit.

**B.    HYTORC Did Not Know, Nor Should It Have Known, of RTI's Purported Misappropriation.**

The Bankruptcy Judge also found that, prior to confirmation of RTI's Chapter 11 plan of liquidation, HYTORC knew that RTI had submitted purchase orders to Triad and Nazareth that included HYTORC's misappropriated designs:

- "Dynamic/Hytorc discovered its alleged claims against RTI, Triad, and Nazareth pre-confirmation." A1268.

- "On April 18, 2013, Dynamic/Hytorc knew RTI purchase orders to Nazareth and Triad were accompanied by RTI designs on which it claimed ownership." A1287.

- "The Court finds throughout the bankruptcy Dynamic/Hytorc planned to undermine the reorganization by suing Nazareth and Triad post-confirmation on the same RTI designs used in contracts assumed by Atlas." *Id.*

- "Before May 30, 2013, the day of the Settlement Order, Dynamic/Hytorc knew it claimed ownership of the RTI designs attached to RTI purchase orders sent to Nazareth and Triad." A1292.

- "Dynamic/Hytorc knew early in the bankruptcy, months before the Settlement, RTI used designs claimed by Dynamic to place purchase orders with its suppliers, the Court finds Dynamic/Hytorc waived any claims to ownership of RTI intellectual property." A1294.

- "The Court finds Dynamic/Hytorc agreed to the settlement and reorganization knowing it had claims against the RTI intellectual property which it intended to assert post-confirmation against RTI's suppliers." *Id.*

These findings of fact are also unsupported by any citations to evidence in the record. There simply is no such evidence.

The only evidence in the record directly contradicts the Bankruptcy Court's finding that HYTORC knew RTI was submitting purchase orders with HYTORC's designs attached. At the hearing on Atlas' motion, Atlas' witness testified that none of the designs were in RTI's possession. A1110. Atlas testified that the designs – regardless of whether they were HYTORC's drawings or RTI's drawings – were never "part of the discussion" between Atlas and HYTORC, either before the mediation or thereafter. A1114. Further, there were no purchase orders (with or without designs attached) that were part of the pre-confirmation record below. The only evidence Triad submitted in support of its unsecured claim were invoices, which did not include purchase orders or designs. A47-68.

Rather, the purchase orders were not provided to HYTORC until November 2013, after Atlas filed its motion. A1308.

Atlas' belated "supplement" to its Motion offered only two arguments in support of the notion that HYTORC knew or should have known that RTI had misappropriated HYTORC's designs. First, Atlas suggested that the Asset Purchase Agreement described RTI's assets as including "drawings" and "specifications." A365. The Asset Purchase Agreement did not schedule or describe those drawings, however, and RTI had other product lines, unrelated to the HYTORC Private Label Agreement, that would have involved "drawings" or "specifications." *See e.g.,* A96-102 (redacted Asset Purchase Agreement); A1108-09 (discussing RTI's other product lines).

Further, there was no reason to believe RTI had ever seen or had access to HYTORC's designs because HYTORC provided them only to Triad and Nazareth, which in turn were prohibited from sharing them with RTI. A672. Mere knowledge that RTI possessed non-specified "drawings" not itemized in the Asset Purchase Agreement does not support the conclusion that HYTORC knew

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}                                    31

that RTI's drawings were HYTORC's proprietary designs because RTI sold other products unrelated to HYTORC and the Private Label Agreement. *See, e.g.*, A1108; A1157-58; and A1191. Thus, the generic reference to "drawings" or "specifications" in the Asset Purchase Agreement could not have put HYTORC on notice that RTI has specifically misappropriated HYTORC's drawings and intended to sell them as an RTI asset. RTI explicitly represented in its Amended Schedule B that it owned no intellectual property (A42), and the inclusion of generic, boilerplate language in the Asset Purchase Agreement was insufficient to put HYTORC on notice that RTI possessed drawings of any kind, much less the specific drawings at issue in this matter.

Atlas' second argument asserted that HYTORC had alleged in the New Jersey Litigation that "Triad and Nazareth began selling the same [HYTORC] products to RTI directly," after HYTORC stopped selling tools and parts to RTI. A144. This allegation, however, in no way supports an inference that RTI had gained access to and copied HYTORC's designs; RTI never had access to HYTORC's designs, which were in Triad and Nazareth's possession. The only plausible

explanation for Triad and Nazareth's continued manufacture and sale of HYTORC-designed products to RTI is that Triad and Nazareth misappropriated and converted the designs in their possession for their own profit. This is precisely what the New Jersey Complaint alleges.

Accordingly, there is no evidence supporting the Bankruptcy Court's finding that HYTORC knew or should have known, prior to the confirmation of the bankruptcy plan, that RTI had submitted to Triad and Nazareth purchase orders that included HYTORC's misappropriated designs. Given the complete lack of evidence before it, the Bankruptcy Court's assertion that HYTORC knew on April 18, 2013 that designs over which it claimed ownership were attached to RTI purchase orders (and intentionally waited until after confirmation of the bankruptcy plan to sue Nazareth and Triad) is a manifest error of fact.

## II. The Bankruptcy Court's Conclusions of Law Regarding Its Jurisdiction and the Applicability of Judicial Estoppel Were in Error.

In addition to the manifest errors of fact discussed above, the Bankruptcy Court's conclusions of law regarding its jurisdiction

and the applicability of judicial estoppel are equally infirm. First, these conclusions of law rest entirely on the factual errors that once corrected, would alone require reversal. But more importantly, the Court's legal analysis is flawed. The Bankruptcy Court does not have jurisdiction over HYTORC's state law claims against Triad and Nazareth simply because all three parties were once unsecured creditors of RTI. Nor, could the Bankruptcy Court properly and *sua sponte* apply judicial estoppel to enjoin a separate sovereign, here the New Jersey state courts, from proceeding with the New Jersey Litigation. Accordingly, the Bankruptcy Court's conclusions of law should be reversed.

### A. HYTORC'S Claims Against Triad and Nazareth Do Not Relate to RTI's Bankruptcy Plan And Are Not Subject to the Bankruptcy Court's Jurisdiction.

The Bankruptcy Court erroneously concluded that it had exclusive jurisdiction to hear HYTORC's claims against Triad and Nazareth:

- "After reviewing the Fifth Circuit rulings in *Craig's*, *Enron*, and *U.S. Brass*, this Court finds the United States District Court for the Southern District of Texas has supplemental federal jurisdiction, and specifically, exclusive post-confirmation jurisdiction over the dispute

between Dynamic/Hytorc, Nazareth, Triad, and Atlas for several reasons." A1268.

- "The facts and law related to the confirmed amended plan along with the other orders of this Court are critical to the dispute." *Id.*

- "Atlas contends and this Court agrees, Dynamic/Hytorc's post-confirmation state case has a direct, immediate, and continuing impact on the reorganization plan." A1268-69.

- "Plaintiffs' New Jersey law suit [sic] requires interpretation of the Mediated Settlement and other orders of this Court. Given the exclusive jurisdiction retained in the confirmed plan, only the federal court has jurisdiction to consider these issues. . . . The Court finds subject matter jurisdiction in the Southern District of Texas." A1269-70.

These conclusions of law are in error because they are based on two clearly erroneous findings of fact: i) that HYTORC alleged that RTI (and Atlas) had misappropriated HYTORC's intellectual property; and ii) that HYTORC knew prior to confirmation of the bankruptcy plan that RTI had submitted HYTORC designs as its own to Triad and Nazareth.

Subject matter jurisdiction is tested at the time the lawsuit is removed to federal court. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001); *Bankruptcy Trading & Inves., L.L.C. v. Chiron*

*Financial Group, Inc.*, 342 B.R. 474, 477 (S.D. Tex. 2006). The New Jersey Litigation was filed on July 18, 2013, a month after the Court confirmed RTI's liquidating Plan and several months after the Debtor's assets were sold to Atlas. Atlas filed its Motion to Enforce on October 21, 2013. Because the only issue currently before the Court is Atlas's Motion, the determinative date for subject matter jurisdiction is October 21, 2013.

An analysis of a bankruptcy court's subject matter jurisdiction over post-confirmation lawsuits must begin with 28 U.S.C. §1334(b). *In re U.S. Brass*, 301 F.3d 296, 303-304 (5th Cir. 2002). It is well established in the Fifth Circuit that once the plan of reorganization has been confirmed, the estate ceases to exist. *Gilbane Bldg. Co. v. Air Sys.* (*In re Encompass Servs. Corp.*), 337 B.R. 864, 871 (Bankr. S.D. Tex. 2006) (citing *In re U.S. Brass* at 304); *Bank of Louisiana v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Texas, Inc.*), 266 F.3d 388, 390 (5th Cir. 2001) (*citing Fairfield Communities v. Daleske* (*In re Fairfield Communities*), 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993)); *In re Enron Corp. Sec, Derivative & ERISA*

*Litig.*, 2005 U.S. Dist. LEXIS 34032, 2005 WL 1745471 (S.D. Tex. July 25, 2005). Without an estate to administer or to which to return assets, this Court cannot determine that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) or under the provision in § 157(b)(2)(O) that gives core status to "proceedings affecting the liquidation of the assets of the estate. . . ." *In re Encompass Servs. Corp.*, 337 B.R. at 871.

Here, RTI's reorganization plan had been confirmed, and therefore bankruptcy court jurisdiction "cease[d] to exist, other than for matters pertaining to the implementation or execution of the plan," that was confirmed months prior to the filing of the New Jersey Litigation. *In re Craig's Stores of Texas, Inc.*, 266 F.3d at 390; *see also In re U.S. Brass*, 301 F.3d at 304. Unlike in *In re Enron Corp. Securities*, 535 F.3d 325 (5th Cir. 2008), it does not matter that HYTORC's state claims arise out of pre-confirmation activities because the claims do not involve the debtor and do not otherwise relate to a Title 11 case, *see* 28 U.S.C. § 1334(b). Further, HYTORC's claims pertain to neither the implementation nor the execution of the bankruptcy plan. HYTORC's New Jersey Litigation

arises solely out of HYTORC's contractual relationship with Triad and Nazareth.

In this case, RTI's assets were sold outside a Plan of Reorganization (at the insistence of Atlas) and the sale closed in April of 2013. RTI's Plan was approved in June 2013; the liquidating Plan has been substantially consummated (as all or nearly all plan payments have been made) and there remains nothing for the Bankruptcy Court to administer. Thus, because there is nothing for the Court to administer, there cannot be jurisdiction under § 157(b)(2)(A).

Also inapplicable is 28 U.S.C. § 157(b)(2)(O), which concerns "proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship." *See In re Encompass Servs. Corp.*, 337 B.R. at 871. The only parties to the New Jersey Litigation are HYTORC as plaintiff, and Triad and Nazareth as defendants. If HYTORC succeeds on its claims against Triad and Nazareth it will not affect the bankruptcy estate because that estate no longer exists, and HYTORC's success will not, in any way, reduce the funds available

to RTI's creditors, as payments to those creditors have all or nearly all been made.

The only remaining applicable statutory section is §157(b)(2)(N) which concerns orders approving the sale of property. In the instant case, the Sale Order is final and the transaction has been fully consummated. Contrary to Atlas' argument, there were no executory contracts between Triad, Nazareth and the Debtor that were assumed and assigned to Atlas. *See* A73-74. Moreover, upon information and belief, any purchase order of Triad and Nazareth that was assumed by Atlas has been fulfilled. Accordingly, the terms of the Sale Order and Assignment Order have been consummated and there is nothing left for this Court to enforce.

Finally, neither the Sale Order nor the Assignment Order contains third party releases of Triad or Nazareth. And even if such releases existed, they would be impermissible and prohibited. *See In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (Fifth Circuit cases broadly foreclose non-consensual non-debtor releases and permanent injunctions in bankruptcy proceedings) (*citing In re Coho Res., Inc.*, 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. Nat'l Gypsum*

*Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993); *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746 (5th Cir. 1995)).

As the New Jersey Litigation does not impact the administration of the RTI bankruptcy in any way, HYTORC's claims do not fall within the subject matter jurisdiction of this Court. *In re Zale Corp.*, 62 F.3d at 753 ("The bankruptcy court has no jurisdiction over a matter that does not affect the debtor."). Thus, the Bankruptcy Court lacked jurisdiction, and should have denied Atlas' motion.

In essence, Atlas is preventing one creditor (HYTORC) from asserting a claim against other creditors (Triad and Nazareth). "In general, a creditor who does not raise a claim against another [creditor in a] bankruptcy proceeding cannot be precluded from later asserting a claim." *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 199-200 (3d Cir. 1999). Thus, the fact that HYTORC did not assert its claims against Triad and Nazareth in this bankruptcy proceeding is of no moment.

Additionally, while the bankruptcy court's confirmation of a reorganization plan "binds the debtor and all creditors vis-à-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties." *In re Seven Seas Petroleum Inc.*, 522 F.3d 575, 590 (5th Cir. 2008); *see also In re Zale Corp.*, 62 F.3d at 753. In fact, Section 524 of the Bankruptcy Code prohibits the discharge of debts of non-debtors. *Id.*; *see also In re Zale Corp.* 62 F. 3d at 760, fn. 44.

However, that is precisely what Atlas is attempting do here. HYTORC alleges that Triad and Nazareth owe a debt to it -- the profits they improperly received through their unlawful use of HYTORC's confidential designs. If HYTORC is prevented from pursuing its claims in the New Jersey Litigation, the Court will have "discharged" the debt that Triad and Nazareth, the defendants in that Litigation, owe to HYTORC.

The fact that an action between creditors to a bankruptcy proceeding shares common parties and facts with the bankruptcy proceeding does not mean that the action is "related" to the bankruptcy proceeding. *In re Seven Seas Petroleum*, 522 F. 3d at

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}                    41

585. If the action between the creditors does not impact the property of the bankrupt estate, the dispute has no effect on the estate and does not give rise to "related to" jurisdiction. *In re Zale Corp.* 62 F. 3d at 753. Moreover, "when property is transferred out of a bankruptcy estate free and clear of all liens, the bankruptcy court ceases to have jurisdiction over that property." *In re Skuna River Lumber*, 564 F.3d 353, 355 (5th Cir. 2009).

Here, the property has transferred out of the bankruptcy estate and the bankruptcy court therefore ceases to have jurisdiction. Atlas paid $4.1 million for RTI's assets -- enough that all of RTI's creditors could be paid in full. Those assets, sold free and clear of any liens, have left the bankruptcy estate and are in Atlas' possession. Accordingly, the Bankruptcy Court lacked jurisdiction over Atlas' Motion, and its conclusion of law regarding jurisdiction should be reversed.

### B. The Court's Judicial Estoppel Analysis Was Flawed And Based On Clearly Erroneous Findings of Fact.

The Bankruptcy Court also erroneously concluded that judicial estoppel applied to HYTORC's claims against Triad and Nazareth:

- "Dynamic/Hytorc's failure to raise its alleged ownership claims to RTI's intellectual property during the bankruptcy presents issues of bad faith, waiver, and judicial estoppel." A1269.

- "Based on the Court's previous findings [of fact], the Court finds that judicial estoppel is necessary to prevent further bad faith acts by plaintiffs which will undermine the reorganization and to protect the integrity of the judicial process." A1296-97.

These conclusions of law are in error because they are based on the same two clearly erroneous findings of fact described *supra*: that HYTORC alleged that RTI (and Atlas) had misappropriated HYTORC's intellectual property, and that HYTORC knew, prior to confirmation of the bankruptcy plan, that RTI had submitted HYTORC designs to Triad and Nazareth as its own.

In addition to resting on clearly erroneous facts, the Court's analysis of res judicata and judicial estoppel was flawed in its consideration of whether the parties were in privity. The Bankruptcy Court applied a four factor test to determine whether res judicata barred HYTORC's state law claims against Triad and Nazareth: "whether: (1) the parties are the same or in privity; (2) a court of competent jurisdiction rendered the judgment in the first proceeding; (3) there is a final judgment on the merits; and (4) the

same claim or cause of action was involved in both proceedings." A1289-90 (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999); *Swate v. Hartwell*, 99 F.3d 1282, 1286 (5th Cir. 1996)). The Court found that there was no dispute that the Bankruptcy Court was a court of competent jurisdiction that rendered a final judgment on the merits in approving RTI's liquidation plan. Thus, the Court found, factors two and three were satisfied. A1290.

However, the Court erred when it found that under the first factor, there was privity between RTI and Nazareth and Triad. In the bankruptcy, the Court determined that "RTI was in a position to adequately protect the interests of Nazareth and Triad." A1291 (citing *Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992); *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1175 (5th Cir. 1992)). Privity requires that a non-party's interests "were adequately represented by a party to the prior action"; there must be "sufficient identity between the parties" such that their interests were aligned and the non-party's interests were sufficiently protected. *See, e.g., Eubanks*, 977 F.2d at 170.

In the bankruptcy, RTI, as an insolvent debtor, and Triad and Nazareth, as unsecured creditors, were in an adversarial relationship; RTI could not be viewed as aligned with Triad and Nazareth and certainly had no concern for protecting Triad and Nazareth's interests. The relationship here between the Debtor and Triad and Nazareth is in stark contrast to *Eubanks v. FDIC*, where the Court of Appeals for the Fifth Circuit held that a husband and wife were in privity, *i.e.*, that their interests "could not be more closely aligned." 977 F.2d at 170. Similarly, in *Russell v. SunAmerica Securities, Inc.*, there was privity between two corporations, the latter of which was merely the continuation of the former, which was a party to an earlier proceeding. 962 F.2d at 1176. Here, the relationship between RTI, Triad and Nazareth cannot possibly be said to reach the level of alignment required to find privity.

Further, with respect to the fourth factor, the claims in the RTI bankruptcy and those HYTORC asserted in the New Jersey Litigation are not, as the Bankruptcy Court summarily concluded, "based on the same nucleus of operative facts." In the bankruptcy

proceedings, no issue was ever raised and no determination was ever made as to the ownership of the drawings Atlas claims to have purchased. The reason for that is clear – RTI never identified any intellectual property on its schedule of assets. For the preclusive effect of res judicata to extend to HYTORC's claims against Triad and Nazareth would mean that plan confirmations

> cut off the ability to initiate *any* cause of action that might have been brought prior to confirmation. The doctrine of res judicata, as enunciated in [*In re*] *Howe*[, 913 F.2d 1138, 1144 (5th Cir. 1990)], is not so broad. Indeed, such an application of a doctrine of issue preclusion would fly in the face of Congress' clear intent, as expressed in Code § 1129(b)(3)(B); if Congress provided for 'the retention and enforcement . . . by a representative of the estate . . . of any . . . claim' under a plan, it surely did not intend that confirmation of a plan would extinguish such claims.

*In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612 (N.D. Tx. 2010). HYTORC's claims in the New Jersey State Litigation, that Triad and Nazareth misappropriated HYTORC's designs arise from facts that were not raised or presented in RTI's bankruptcy, and the Court's conclusory finding to the contrary is an erroneous over expansion of the doctrine of res judicata.

Judicial estoppel is an extraordinary remedy that should only be used when a party's inconsistent behavior will result in a miscarriage of justice. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 329 (S.D. Tex. 2008); *see also In re Delta Starr Broadcasting, L.L.C.*, 422 Fed.Appx. 362, 367 (5th Cir. 2011) ("[b]ecause judicial estoppel is an extraordinary remedy, we decline to apply it where other appropriate grounds for affirmance exist."). Further, the doctrine of judicial estoppel, which was neither briefed nor argued by Atlas or HYTORC, is only applied *sua sponte* in an "especially egregious case wherein a party has successfully asserted a directly contrary position." *United States ex rel. Am. Bank v. CIT Constr. Inc.*, 944 F.2d 253, 258 (5th Cir. 1991); *see also Beall v. United States*, 467 F.3d 864, 870 (5th Cir. 2006). The doctrine is meant to protect courts, not litigants, and is not intended to eliminate all inconsistencies. *ASARCO*, 396 B.R. at 329

In this instance, given the complete lack of notice to HYTORC that RTI would claim ownership over HYTORC's proprietary designs and then purport to transfer ownership of those designs to Atlas, there is no evidence demonstrating that HYTORC's assertion of its

{851177-00002 LKW 6/12/2015 00972120.DOCX 1}                    47

claims could possibly represent the type of "flagrant threat to the judicial process" that would justify the Bankruptcy Court's *sua sponte* invocation of judicial estoppel. *United States ex rel. Am. Bank v. CIT Constr. Inc.*, 944 F.2d at 258.

Here, there can be no concern regarding a miscarriage of justice that would justify application of judicial estoppel; HYTORC acted consistently throughout this proceeding and the New Jersey Litigation to protect its rights as soon as it had reason to believe that its intellectual property had been misappropriated. The court should not exercise judicial estoppel to punish HYTORC for not acting on information which it could not have possessed due to the obfuscations of RTI.

Finally, in *Am. Bank*, *supra*, the parties were able to present arguments to the Court of Appeals regarding judicial estoppel, after which the Fifth Circuit determined that the doctrine did not apply. Here, neither Atlas nor HYTORC raised the issue of judicial estoppel in their briefing or had the opportunity to present the Bankruptcy Court with any arguments regarding application of the doctrine prior to the issuance of the Memorandum Opinion. Therefore, the

Bankruptcy Court's *sua sponte* application of the doctrine was improper, rests on clearly erroneous facts, and should be reversed.

## Conclusion

HYTORC's New Jersey Litigation alleges that Triad and Nazareth misappropriated its trade secrets and unlawfully manufactured tools based upon HYTORC's confidential designs. In that litigation, HYTORC seeks to compel Triad and Nazareth to disgorge the profits obtained by selling those tools. HYTORC's claims simply do not impact the RTI bankruptcy. HYTORC has not asserted claims against RTI or Atlas, is not seeking to undo the asset sale, and is not disputing any creditor payments. Rather, HYTORC is simply seeking to prevent Triad and Nazareth from manufacturing wrenches based upon HYTORC's confidential designs and to disgorge any profits that Triad and Nazareth received through their unlawful actions. Even if the assets purchased by Atlas were somehow are implicated in the New Jersey Litigation, this Court's jurisdiction ceased once those assets left RTI's possession.

Accordingly, because the Bankruptcy Court's proposed findings of fact and conclusions of law are erroneous, HYTORC asks the District Court to reject them, and to deny Atlas' Motion to Enforce for lack of jurisdiction.

Dated: June 12, 2015

Respectfully submitted,

HOOVER SLOVACEK LLP                PASHMAN STEIN, PC

*/s/ T. Josh Judd*                 /s/ Samuel Samaro (by per. TJJ)
By: _____              By: _____
EDWARD L. ROTHBERG                 Samuel Samaro
State Bar No. 17313990             New Jersey Bar No. 029631988
T. JOSH JUDD                       Court Plaza South
State Bar No. 24036866             21 Main Street, Suite 100
Galleria Tower II                  Hackensack, NJ 07601
5051 Westheimer, Suite 1200        *Admitted Pro Hac Vice*
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 735-4135
*Local Counsel*

ATTORNEYS FOR DYNAMIC, INC. &
HYTORC, A DIVISION OF UNEX CORPORATION

## CERTIFICATION OF COMPLIANCE
## PURSUANT TO FED. R. BANK. P. 8015(a)(7)(C)
(Type-Volume Limitation, Typeface Requirements, and
Type Style Requirements)

This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7) because this brief contains 9,077 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(iii), as determined by the Word Count function of the Microsoft Word 2010 word processing program used to prepare this brief.

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) & (6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in 14-point Bookman Old Style.

## Certificate of Service

     This is to certify that on June 12, 2015, I served a true and correct copy of the foregoing Brief, via the Clerk of the Court through the Court's electronic case management system, U.S. First Class Mail and Email.

*/s/ T. Josh Judd*

By:_____

T. Josh Judd

**4:15-cv-00377 Notice has been electronically mailed to:**

David J Bradley     Darlene_Hansen@txs.uscourts.gov

David W Anderson     dwanderson@ralaw.net

Karen K Brown     J_Brown_ECF@txs.uscourts.gov

Michael P Ridulfo     mridulfo@krcl.com, swilson@krcl.com

Samuel J Samaro     ssamaro@pashmanstein.com

Savvas Harry Stefanides     shstef@stefanideslaw.com

Terry Josh Judd     judd@hooverslovacek.com, bankruptcy1@hooverslovacek.com, welborn@hooverslovacek.com

**4:15-cv-00377 Notice has not been electronically mailed to:**

Barbara Mincey Rogers
Rogers & Anderson, PLLC
1415 North Loop West
Suite 1020
Houston, TX 77008

**Via Email to:** Angela N. Offerman     aofferman@krcl.com