**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| RAPID-TORC, INC., | § | |
| | § | |
| Debtor | § | CIVIL ACTION NO. H-15-377 |
| | § | |
| DYNAMIC TOOLS, INC., | § | |
| | § | |
| Appellant. | § | |
| | § | |
| VS. | § | |
| | § | |
| ATLAS COPCO TOOLS AND | § | |
| ASSEMBLY SYSTEMS, LLC. | § | |
| LLC, | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM AND OPINION**

Dynamic Tools, Inc., a subsidiary of Hytorc,[1] sued Triad Tool & Die Co. and Nazareth

Machine Works in New Jersey state court.  Triad and Nazareth removed that action to the United

States District Court for the District of New Jersey, which referred the matter to the bankruptcy

court.  Meanwhile, back in the Bankruptcy Court for the Southern District of Texas, Houston

Division, Atlas Copco Tools and Assembly Systems, LLC, a customer of both Triad and Nazareth,

the New Jersey defendants, filed motions to enforce various orders entered in the Houston

bankruptcy of Rapid-Torc, Inc.  That bankruptcy had been pending since 2012.  Atlas had acquired

Rapid-Torc's assets out of bankruptcy.  In the motions Atlas filed in the Houston bankruptcy court,

---

[1] Following the convention adopted in the briefs, the court will refer to Dynamic and Hytorc collectively as "Hytorc."

1

Atlas argued that: (1) the Texas district and bankruptcy court had exclusive jurisdiction to hear the suit pending in New Jersey; and (2) the New Jersey suit was a bad-faith violation of several orders entered in the Houston Rapid-Torc bankruptcy.  The Houston bankruptcy judge agreed, assumed jurisdiction over the New Jersey suit, and disposed of it on the merits, enjoining Hytorc from pursuing the New Jersey litigation because to do so violated orders the Houston bankruptcy court had entered in the Houston Rapid-Torc bankruptcy.

Hytorc appealed.  Because the bankruptcy court's factual findings were clearly erroneous and those errors were critical to its legal conclusions, the Houston bankruptcy court's order is reversed and Atlas's motion to enforce is denied.  The reasons are explained in detail below.

I.      **Background**

A.      **Prepetition**

Hytorc sells hydraulic tools and parts for industrial applications.  (App. at 1316).  For many years, Hytorc contracted with Triad and Nazareth to manufacture tools based on drawings it created. (App. 1316-18).  Hytorc would send the drawings to Triad and Nazareth to refine based on their manufacturing expertise and to manufacture tools for Hytorc using those drawings.  Hytorc claims that sometime in 2003, it entered into a "private label" oral licensing  agreement with Rapid-Torc. (App. 1318).  The agreement was not written or memorialized in a writing.  Under this agreement, Hytorc sent its tool drawings to Triad and Nazareth to be manufactured for Rapid-Torc, using Rapid-Torc logos and branding.

Hytorc claimed in the New Jersey litigation it filed against Triad and Nazareth that it retained ownership of the tool designs and drawings under the Rapid-Torc licensing agreement.  Hytorc claimed that it always sent its drawings directly to Triad or Nazareth, and never sent them directly

to Rapid-Torc.  Marshall Taff, a Nazareth employee, testified in the New Jersey litigation that some of the drawings were labeled "Dynamic" and some were labeled "Rapid Torc, Inc."  Taff also testified that he understood  Hytorc, Dynamic, and Rapid-Torc to be the same company and he did not know which one sent Nazareth the drawings to use in making the tools with the Rapid-Torc label.

In early 2012, Rapid-Torc stopped paying Hytorc for the use of the drawings or tools.  (App. at 1319).  In response, Hytorc stopping ordering the tools from Nazareth and Triad for Rapid-Torc. Hytorc got a judgment against Rapid-Torc in Harris County, Texas District Court for $2,451,182, plus attorney's fees, costs, and interests, for tools it already delivered to Rapid-Torc.  (App.  681). Hytorc alleged in the New Jersey suit that around this time, Triad and Nazareth began to manufacture and sell tools directly to Rapid-Torc using Hytorc drawings already in Triad and Nazareth's possession.  A Triad representative, Eric Wichelhaus, testified that in late 2011, Rapid Torc began sending purchase orders directly to his company.   Those Hytorc purchase orders contained drawings for tools with the same Rapid-Torc labeling that had been used in the past.  Taff testified that Bob Aponick, a Hytorc employee, had told Taff in 2010 that at some point, Rapid-Torc would start ordering tools directly from Nazareth.

### B.    The Bankruptcy

Rapid-Torc filed a Chapter 11 petition in the Southern District of Texas on December 12, 2012.  Hytorc filed a proof of claim based on the Texas judgment, and  moved for appointment of a trustee.  Rapid-Torc listed Nazareth and Triad as creditors in its amended Schedule F bankruptcy disclosures.  (App. at 20, 22).  Rapid-Torc also listed assets in its Schedule B disclosures.  One of the asset categories that must be disclosed on Schedule B is any intellectual property the debtor

owns.  For the entry for intellectual property on Schedule B, Rapid-Torc wrote  "none." Rapid-Torc did not list any intellectual property in the space provided on the Schedule.  (App. at 42).  Rapid-Torc did not list intellectual property under other asset categories on Schedule B or in other schedules it filed in the Houston bankruptcy proceeding.

Atlas had been interested in acquiring Rapid-Torc before it filed for bankruptcy and continued to pursue the acquisition during the bankruptcy.  After Rapid-Torc filed its petition and disclosed its creditors, Atlas and Rapid-Torc signed an agreement for Atlas to purchase all of Rapid-Torc's assets and to assume its executory contracts.   Schedule 4.11 of the Atlas–Rapid-Torc Purchase Agreement listed various types of intellectual property that Atlas would acquire in the sale and what intellectual property Rapid-Torc had of each listed type, if any.  The Purchase Agreement schedule stated that Rapid-Torc owned no trademarks, patents, copyrights, or domain names.  The schedule then identified the following list of Rapid-Torc assets that Atlas would acquire:

> All Trade Secrets owned and used by [Rapid-Torc] in connection with the Business are the following: all know-how, trade secrets, confidential information, customer lists, supplier lists, software, technical information, data, process technology, plans, drawings, blueprints, devises, methods, formulas, protocols, and, specifications whether or not patentable, necessary, or useful, in the manufacture of all of the Products manufactured or assembled by, or for, the Business, [Rapid-Torc] licenses such Trade Secrets to the Belgian Seller without charge. [Rapid-Torc] does not license Trade Secrets from any third party nor does it license any Trade Secrets to any third party other than the Belgian Seller.

The schedule also stated that "Trade Secrets of Rapid-Torc are located at the Pasadena Texas Facility, except such Trade Secrets that may be located at vendors and suppliers of the Business." (App. at 122).

After signing the Purchase Agreement, Atlas and Rapid-Torc sought emergency approval of the sale from the Houston bankruptcy court.  While that motion was pending, Atlas and Hytorc engaged in formal mediation to resolve disputes about the Purchase Agreement and its impact on

4

Atlas's claims in Rapid-Torc's bankruptcy. The mediation was fruitful; Atlas and Hytorc entered

into a Settlement Agreement on April 17, 2013. Under the Settlement Agreement, Hytorc would

receive $2,300,000 in exchange for withdrawing its trustee-appointment motion, supporting the

motion to immediately approve the sale, agreeing not to take any action to defeat Rapid-Torc's plan

of reorganization, and signing a release of claims against Atlas and Rapid-Torc. The release stated:

> For and in consideration of the mutual covenants recited herein, DYNAMIC, by
> these presents does hereby for itself, its successors, affiliates, legal representatives,
> administrators, officers, directors, assigns, agents, employees, and all persons or
> entities in privity including trustees and receivers, remise, give up, quit claim, settle,
> compromise, fully release, and forever discharge RAPIDTORC and ATLAS their
> shareholders, assigns, officers, directors, employees, agents, attorneys,
> representatives, successors and all those in privity with RAPID-TORC or ATLAS,
> (1) of and from all rights, demands, claims, obligations, causes of action, suits,
> controversies, debts, dues, sums of money, accounts, variances, trespasses, extends,
> privileges, covenants, contracts, agreements, promises, judgments, infringements,
> fines, penalties, (emphasis original) damages, executions, at law or in equity,
> whether or not well founded in law or fact, asserted or which could have been
> asserted in the Lawsuits, Bankruptcy Case . . . .

(App. 657-65). The bankruptcy court held a hearing on Atlas's and Rapid-Torc's motion to approve

the sale to Atlas and entered an order approving the Purchase Agreement the day after the parties

signed it. Besides this "Sale Order," the bankruptcy court also signed an Assumption Order

authorizing Atlas to assume Rapid-Torc's contracts. Two months later, the court approved Rapid-

Torc's Chapter 11 Plan by signing the "Confirmation Order." The Rapid-Torc Plan incorporated the

Sale and Assumption Orders and provided that Triad and Nazareth's claims would be fully paid.

(App. 125-27).

### C. The New Jersey Litigation

One month after the bankruptcy court confirmed Rapid-Torc's Chapter 11 Plan, Hytorc sued

Triad and Nazareth in New Jersey state court for misappropriating Hytorc's trade secrets. Hytorc

alleged that after it stopped ordering tools from Triad and Nazareth on Rapid-Torc's behalf because of Rapid-Torc's nonpayment, Triad and Nazareth began selling tools directly to Rapid-Torc. Hytorc alleged that Triad and Nazareth manufactured the tools using drawings Hytorc had previously sent to Triad and Nazareth.  Hytorc acknowledged that it learned that it might have claims against Triad and Nazareth when they were disclosed as creditors in the bankruptcy, but denied that its claims are based on drawings Rapid-Torc itself sent directly to Triad and Nazareth.  Hytorc sought money damages and an injunction in the New Jersey lawsuit it filed.   Triad and Nazareth removed to the United States District Court for the District of New Jersey, which referred the matter to the bankruptcy court in the same district.  The action is pending in that court.

### D.    The Motion to Enforce

Atlas filed a motion to enforce the Settlement Agreement and the Confirmation Order in the bankruptcy court for the Southern District of Texas.  The motion argued that the Texas bankruptcy court had original and exclusive jurisdiction to hear the New Jersey litigation and that the court's prior orders effectively barred Hytorc from prosecuting its claims against Triad and Nazareth in New Jersey court.  Atlas asked the Texas bankruptcy court that had approved the Rapid-Torc Plan and the sale of Rapid-Torc to Atlas to enjoin Hytorc from proceeding with the New Jersey litigation. Originally, the motion asserted that Hytorc had released its claims against Triad and Nazareth, pointing to the Settlement Agreement language releasing Atlas and "all persons or entities in privity."  Atlas later filed a supplemental motion in which it asserted, apparently for the first time, that it had acquired the drawings at issue in the New Jersey litigation as part of its purchase of Rapid-Torc during the bankruptcy.

Hytorc argued that the Texas bankruptcy court lacked jurisdiction over the New Jersey

litigation and, in the alternative, asked the Texas bankruptcy court to abstain from adjudicating Atlas's claims under 28 U.S.C. § 1334(c).  After holding an evidentiary hearing, the bankruptcy court granted Atlas's motion to enforce its prior orders and enjoined Hytorc from proceeding with the New Jersey litigation.  The bankruptcy court held that:

- it had original and exclusive jurisdiction over the New Jersey litigation because the trade secrets involved in that litigation were property distributed to Atlas through its purchase of Rapid-Torc in the bankruptcy and therefore affected the Plan, its implementation, and other orders of the Texas bankruptcy court,  (*see* Bry. Ct. op. at App. 1268-70);

- the Texas bankruptcy court's Confirmation Order entered in the Rapid-Torc bankruptcy had preclusive effect on the claims involved in the New Jersey litigation because Hytorc knew that during the Houston bankruptcy proceeding, Rapid-Torc had asserted its ownership to the drawings and trade secrets that were the basis of Hytorc's claims against Triad and Nazareth in the New Jersey litigation,  (*see* Bry. Ct. op. at App. 1289-92);

- the Settlement Agreement and Sale Order the Texas bankruptcy court had signed approving the transactions between Rapid-Torc and Atlas resolved Hytorc's New Jersey claim in favor of Triad and Nazareth, because Hytorc had released its ownership claims to the drawings based on the knowledge it acquired during the bankruptcy that Rapid-Torc was using (and claimed to own) the designs, (*see* Bry. Ct. op. at App. 1293-95);

- judicial estoppel applied because Rapid-Torc had intentionally failed to raise its claims of ownership to the drawings in the bankruptcy and the New Jersey lawsuit represented a change of its position on the ownership issue, (*see* Bry. Ct. op. at App. 1296-97).

The bankruptcy court issued its rulings on claim and issue preclusion, including judicial

estoppel, on its own; neither party had raised or briefed the issues. Based on these rulings, the bankruptcy court granted Atlas's motion to enforce the bankruptcy court's orders issued in the Rapid-Torc bankruptcy and held that Hytorc was "precluded" from proceeding with the New Jersey litigation. The Texas bankruptcy court declined to determine whether it had constitutional authority to enter final judgment under the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The court indicated that its opinion should be treated either as a final decision or as a report and recommendation based on this district court's determination of the constitutional question.[2]

In sum, the bankruptcy court did two things. First, it assumed jurisdiction over the New Jersey litigation and adjudicated the merits of that suit by holding that the Confirmation Order, Sale Order, and Settlement Agreement the court had signed in the Rapid-Torc bankruptcy precluded Hytorc from proceeding with its claims against Triad and Nazareth in New Jersey under claim preclusion (res judicata) and judicial estoppel. Second, it enjoined Hytorc from continuing to litigate the New Jersey suit in New Jersey, reasoning that by doing so, Hytorc was engaged in bad-faith violations of the bankruptcy court's orders issued in the Rapid-Torc proceeding. This appeal followed.

## II.    Analysis

### A.    Jurisdiction

"Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party seeking a federal forum has the burden to show federal jurisdiction.

---

[2] *Stern* held that "even though bankruptcy courts are statutorily authorized to enter final judgments on a class of bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims." *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2168 (2014). When a bankruptcy court is presented with a *Stern* claim, it can enter a report and recommendation to be reviewed *de novo* by the district court, but it may not enter final judgment. *Id.*

In the absence of this showing, the court presumes it lacks jurisdiction.  *Id.*

The Texas bankruptcy court identified two bases for its subject-matter jurisdiction over the New Jersey claims Hytorc asserted against Triad and Nazareth.  First, it determined that the dispute "directly related to assets of [Rapid-Torc]" sold by orders the Texas bankruptcy court had issued in the Rapid-Torc bankruptcy.  The Texas bankruptcy court stated that the New Jersey case had a "direct, immediate, and continuing impact on the [Rapid-Torc] reorganization plan."  Second, the court determined that Hytorc's suit was a bad-faith attempt to evade the orders entered in the Rapid-Torc bankruptcy.  The court noted the Supreme Court's statement that a bankruptcy court "plainly" has jurisdiction to interpret and enforce its own prior orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).  The court reasoned that it could adjudicate the dispute between Hytorc and Triad and Nazareth in Houston and enjoin Hytorc from pursuing the claims in New Jersey as a matter of enforcing its own prior orders.

The Texas bankruptcy court analyzed the New Jersey litigation as "related to" the Rapid-Torc bankruptcy.  The Texas bankruptcy court assumed it had authority to decide the trade-secret misappropriation claims Hytorc had raised in the New Jersey litigation.  The court then decided those claims.  The bankruptcy court held that the New Jersey litigation was barred by the claim preclusion and judicial estoppel doctrines, and that Hytorc had waived any right to assert ownership over the designs in question when it settled its claims against Rapid-Torc during the bankruptcy. The question on this appeal is whether the bankruptcy court had the authority to enter those orders and whether they withstand appellate challenge.

Subject-matter "[j]urisdiction for bankruptcy cases is defined by 28 U.S.C. § 1334."  *In re TMT Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014) (per curiam).  Under the first subsection

of § 1334, district and therefore bankruptcy courts have exclusive jurisdiction over "all cases under title 11." 28 U.S.C. § 1334(a).  That subsection refer to bankruptcy cases initiated by the filing of a bankruptcy petition.  *See Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  It is inapplicable because the New Jersey litigation is a state-law trade-secrets action.

A district court and the bankruptcy courts in that district also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  *Id.* § 1334(b).  "Because § 1334(b) defines jurisdiction conjunctively, 'a district court has jurisdiction over the subject matter if it is at least related to the underlying bankruptcy.'" *In re TMT*, 764 F.3d at 523 (quoting *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993)).

"The bankruptcy court's 'related-to' jurisdiction is not limitless."  *In re Morrison*, 555 F.3d 473, 479 (5th Cir. 2009) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)).  "Related" is a term of art in this context.  It does not encompass all proceedings with any connection at all to the bankruptcy.  *In re Bass*, 171 F.3d 171 F.3d 1016, 1022 (5th Cir. 1999).  Common facts between the underlying bankruptcy and the claim for which a party seeks a federal forum is not enough.  *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999).  A court must carefully examine the effect of deciding the disputed issue or matter on the debtor and on the bankruptcy estate.  A matter is "related to" the bankruptcy only if "the anticipated outcome of the action" could "(1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate."  *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).  Both must be met for federal jurisdiction to arise.  *Id.*  "[T]here is no jurisdiction to resolve all disputes among creditors of a bankrupt."  *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987).  Suits solely between creditors can, in principle, affect the bankruptcy estate and be related to the bankruptcy if they would "affect[] the amount of

property available for distribution or the allocation of property among creditors." *See id.* Treatises acknowledge that it "is often difficult" to show that the outcome of a dispute between creditors will affect a bankruptcy debtor or the estate. *See, e.g.*, HON. JOAN N. FEENEY ET AL., 1 BANKRUPTCY LAW MANUAL § 2:9 (5th ed.).

That difficulty is compounded here by the fact that the Rapid-Torc bankruptcy plan was confirmed when the Houston bankruptcy court enjoined Hytorc from proceeding with its trade-secret misappropriation claims in New Jersey and dismissed those claims with prejudice. A confirmed plan may narrow the bankruptcy court's related-to jurisdiction. The Fifth Circuit has held that, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). The court did not explain the universe of cases that would be permitted under an ordinary § 1334 analysis but excluded under the rule in *Craig's*. Subsequent Fifth Circuit cases have referred to the *Craig's* standard for postconfirmation bankruptcy jurisdiction, but without providing additional clarity other than to note that § 1334 does not put additional limits on bankruptcy jurisdiction and to emphasize that *Craig's* facts and holding were "narrow." *See In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2008). The subsequent Fifth Circuit cases have not meaningfully clarified the set of circumstances in which the *Craig's* rule would operate to kick a case otherwise meeting the § 1334 "related to" test out of federal court. The circuit has acknowledged—without additional explanation—that it could "imagine cases where the two approaches would produce different results . . . ." *In re U.S. Brass Corp.*, 301 F.3d at 305.

Close parsing of these cases is not required today. The *Craig's* rule is a narrowing principle,

but, as explained below, the New Jersey litigation is not "related to" the Rapid-Torc bankruptcy even under the ordinary § 1334 test.  As a result, the New Jersey litigation is not "related to" the bankruptcy under the narrower *Craig's* rule.

Neither the bankruptcy court's opinion nor Atlas identifies any effect that the outcome of Hytorc's suit against Triad and Nazareth could have on Rapid-Torc or its bankruptcy estate.  Atlas argues at some length that the bankruptcy court properly exercised jurisdiction over the New Jersey suit because it is a "core" proceeding under 28 U.S.C. § 157.  These arguments appear to miss the mark because § 157 is not a jurisdictional grant and cannot expand a bankruptcy court's authority beyond what § 1334 grants. *Matter of Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *see also In re TMT*, 764 F.3d at 527 ("[B]efore a court can decide whether an action is a core or a non-core proceeding, it must first determine whether subject-matter jurisdiction under § 1334 even exists.").  Section 157 governs what matters the district courts may refer to the bankruptcy courts and what the bankruptcy courts may do to dispose of those matters. *Matter of Walker*, 51 F.3d at 569.  The bulk of Atlas's arguments are irrelevant to the threshold question of jurisdiction and do not meet Atlas's burden to show federal jurisdiction.

Nor do Atlas's arguments demonstrate any effect the outcome of the New Jersey litigation could have on Rapid-Torc, the Houston bankruptcy court debtor, or its bankruptcy estate.  Atlas first notes that when it acquired Rapid-Torc's assets in the bankruptcy, it paid the bankruptcy estate $4.1 million, which was distributed to Rapid-Torc's creditors, including Nazareth and Triad.  Nazareth and Triad's claims in the bankruptcy were based on Rapid-Torc's failure to pay Nazareth and Triad for tools they had manufactured for Rapid-Torc.  Atlas argues that the New Jersey suit is an effort to require Rapid-Torc to disgorge payments it made to Triad and Nazareth under the confirmed

12

bankruptcy plan.  Atlas also argues that in the purchase of Rapid-Torc, it assumed Rapid-Torc's contract obligations, including for executory contracts.  (App. at 70).  Atlas argues that because it assumed Rapid-Torc's responsibility to pay purchase orders from Nazareth and Triad as part of the confirmed plan, Hytorc's New Jersey suit against Nazareth and Triad in effect seeks damages against them for completing those purchase orders. Finally, Atlas argues that the injunction Hytorc asked the New Jersey court to issue in the trade-secret misappropriation case would interfere with the rights that Atlas acquired under the bankruptcy plan.  Atlas bases this argument on the claim that it purchased the relevant drawings from Rapid-Torc when it acquired the company and has the right to continue to use them.

The court explains in more detail below why it rejects Atlas's characterization of the underlying bankruptcy proceeding.  For now it is sufficient to note the critical problem with Atlas's argument: on their own terms, the effects Atlas has identified have nothing to do with Rapid-Torc itself or with the Rapid-Torc bankruptcy estate.  A financial impact on Triad, Nazareth, or Atlas is not an impact on Rapid-Torc or on its bankruptcy estate.

Nor can Atlas's "tracing" theory salvage its bid for federal jurisdiction.  Atlas claims that the suit seeks "disgorgement" of money paid pursuant to the bankruptcy plan and therefore relates to the bankruptcy.  Assuming, without deciding, that this is a fair characterization, those funds had already been transferred out of the Rapid-Torc bankruptcy estate to Triad and Nazareth when the bankruptcy court enjoined Hytorc from proceeding with the New Jersey litigation.  Money that has been distributed out of a bankruptcy estate is, by definition, no longer part of the bankruptcy estate. An impact on that money by requiring those who received it to pay a debt owed to another party is not an impact on the bankrupt debtor or the bankruptcy estate.  *See Matter of Xonics, Inc.*, 813 F.2d

13

at 131.

Atlas's claim that Hytorc's requested injunction would interfere with its rights under the bankruptcy plan also fails. Purported interference with business relationships that Atlas acquired in the course of the bankruptcy is not an effect on the bankruptcy estate or on Rapid-Torc. To the extent that Atlas is instead arguing that the action would violate the bankruptcy court's orders in the Rapid-Torc case, that argument is addressed and rejected below.

Atlas bears the burden of demonstrating the existence of federal jurisdiction. It has failed to do so, because it has not explained why or identified record evidence showing how the New Jersey litigation could affect Rapid-Torc or the bankruptcy estate. The Texas bankruptcy court had no "related to" jurisdiction over the New Jersey litigation.

### B. The Merits

#### 1. This Court Applies Traditional Appellate Standards of Review.

As noted above, the Supreme Court has held that "even though bankruptcy courts are statutorily authorized to enter final judgments on a class of bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims." *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2168 (2014). Congress, by statute, divided "all matters that may be referred to the bankruptcy court into two categories: 'core' and 'non-core' proceedings." *Id.* at 2171. For core claims, Congress authorized the bankruptcy courts to enter final judgments subject to appellate review by the district courts; for noncore claims, Congress authorized the bankruptcy courts to hear the claims and submit a report and recommendation for the district court to review *de novo*. *Id.*

*Stern* held that this arrangement violated Article III in certain cases, because the power to

14

finally adjudicate certain disputes involving "private rights" could not be vested in non-Article III tribunals.  There is at least a colorable argument that this state-law trade-secrets dispute is such a case.  Objections to a bankruptcy court's final adjudication of a *Stern* claim are waivable so long as the waiver is knowing and voluntary.  *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1944-46 (2015).  The waiver need not be express; when a party knows the basis for a *Stern* objection and fails to press it, that failure implies consent.  *See In re Delta Produce, L.P.*, 817 F.3d 141, 149 (5th Cir. 2016); *Wellness Int'l Network, Ltd. v. Sharif*, 617 Fed. App'x. 589, 590-91 (7th Cir. 2015) (determining on remand from the Supreme Court that objecting party forfeited his *Stern* argument by failing to raise it until his reply brief).  The bankruptcy court explicitly noted that it was unsure of its authority under *Stern* to enter final judgment, but Hytorc does not include in its appellate brief arguments challenging this authority.  Hytorc has therefore waived an argument that final judgment was improper under *Stern*.

The court reviews the bankruptcy court's findings under traditional appellate standards. Legal conclusions are reviewed *de novo*, and factual conclusions are reviewed for clear error.  *In re Brundage*, No. BR 12-35869, 2015 WL 4658020, at *3 (S.D. Tex. Aug. 5, 2015).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)).

**2.       The Record Does Not Support the District Court's Factual Findings.**

       **a.       The factual finding that, during the bankruptcy proceeding, Hytorc knew that Rapid-Torc asserted ownership over the drawings is clearly erroneous.**

15

The bankruptcy court found that Rapid-Torc had asserted its ownership of the drawings at issue in the New Jersey litigation during the earlier Houston bankruptcy proceeding and that Hytorc knew of Rapid-Torc's ownership claim.  The bankruptcy court (and Atlas on appeal) assert that Hytorc knew during the Houston bankruptcy that Rapid-Torc had been sending drawings to Triad and Nazareth based on Hytorc drawings, and that Hytorc believed it was the only and rightful owner of those drawings.  The Houston bankruptcy court's findings that Rapid-Torc had asserted ownership of the drawings and that Hytorc knew this fact during the bankruptcy were critical to the court's conclusions that it had jurisdiction to enforce its prior orders by enjoining Hytorc from litigating the New Jersey case and by deciding the claims Hytorc raised in New Jersey on the merits.

Hytorc argues that the findings were clearly erroneous.  Hytorc argues that there was no evidence that it knew during the bankruptcy proceeding that Rapid Torc was asserting ownership in the Hytorc drawings.  Instead, Hytorc argues that the New Jersey lawsuit deals with drawings and claims that were not involved in, or resolved by, Rapid-Torc's bankruptcy.  According to Hytorc's claims in New Jersey, when Triad and Nazareth manufactured products for Hytorc to sell to Rapid-Torc, they did so based on designs they received from Hytorc.  In New Jersey, Hytorc alleged that after it stopped ordering tools manufactured by Triad and Nazareth under the Rapid-Torc brand for sale to Rapid-Torc, Triad and Nazareth dealt directly with Rapid-Torc, manufacturing tools based on the Hytorc drawings already in its possession.  Hytorc argues that it did not know that Rapid-Torc claimed ownership in those drawings during the bankruptcy proceeding.  Although Hytorc believed and alleged in the New Jersey court that Triad and Nazareth were missapropriating its drawings and using them to manufacture tools for Rapid-Torc, Hytorc asserts that no evidence supports an

16

inference that it knew at any time before the bankruptcy court issued the order enjoining the New Jersey case that Rapid-Torc asserted that it, not Hytorc, owned those drawings.

The bankruptcy court found that Hytorc knew during the Rapid-Torc bankruptcy proceeding that Atlas was assuming unpaid or unfilled Rapid-Torc purchase orders to Triad and Nazareth that attached Rapid-Torc–stamped drawings.  The bankruptcy court pointed to the Assumption Order, which stated that Atlas was assuming those purchase orders.  The parties now agree that this finding was erroneous.  Although the Assumption Order referred to Atlas's assumption of purchase orders from Rapid-Torc to Triad and Nazareth, there is no reference to attached drawings.  Nor is there evidence that Hytorc otherwise had access to the purchase orders that Rapid-Torc had sent directly to Triad and Nazareth.  Instead, Hytorc had access only to invoices Triad and Nazareth sent to Rapid-Torc for payment for tools they had produced.  It is undisputed that the invoices did not refer to Rapid-Torc–stamped drawings.

The evidence fails to show or support an inference that Hytorc knew that Rapid-Torc asserted ownership of the disputed designs.  The fact that Triad and Nazareth made tools that it sold directly to Rapid-Torc after Hytorc stopped ordering tools from them on Rapid-Torc's behalf is consistent with Hytorc's theory in the New Jersey lawsuit that Triad and Nazareth were making the tools that Rapid-Torc ordered directly using the drawings they had previously obtained from Hytorc.  Although Hytorc knew that Rapid-Torc was doing business directly with Triad and Nazareth that gave rise to the misappropriation claim against them, that knowledge fails to show that Hytorc knew during the Rapid-Torc bankruptcy of Rapid-Torc's claim to own the trade secrets.

The bankruptcy court also pointed to the Sale Order to support its findings.  The bankruptcy court's Sale Order approving the sale of Rapid-Torc to Atlas provided that the sale was to be

governed by the Purchase Agreement.  Hytorc had access to that Purchase Agreement.  In that

Purchase Agreement, Atlas agreed to purchase Rapid-Torc's intellectual property listed on schedule

4.11.  That schedule listed various types of intellectual property and then stated what items within

that category the sale to Atlas would cover.   The schedule stated that Rapid-Torc owns no

trademarks, patents, copyrights, or domain names.  The schedule then identified the following list

of assets:

> All Trade Secrets owned and used by [Rapid-Torc] in connection with the Business
> are the following: all know-how, trade secrets, confidential information, customer
> lists, supplier lists, software, technical information, data, process technology, plans,
> drawings, blueprints, devises, methods, formulas, protocols, and, specifications
> whether or not patentable, necessary, or useful, in the manufacture of all of the
> Products manufactured or assembled by, or for, the Business, [Rapid-Torc] licenses
> such Trade Secrets to the Belgian Seller without charge. [Rapid-Torc] does not
> license Trade Secrets from any third party nor does it license any Trade Secrets to
> any third party other than the Belgian Seller.

The schedule stated that "Trade Secrets of Rapid-Torc are located at the Pasadena Texas Facility,

except such Trade Secrets that may be located at vendors and suppliers of the Business."  (App. at

122).

        This general language in the schedule to the Purchase Agreement does not show that, in the

bankruptcy court, Rapid-Torc claimed ownership of the specific drawings at issue in the New Jersey

litigation, or that Atlas had acquired the rights to those drawings, so as to support an inference that

Hytorc knew during Rapid-Torc's bankruptcy that Rapid-Torc claimed it owned the drawings or that

Atlas had acquired them.  The schedules filed in the bankruptcy court, including with the Purchase

Agreement, do not  list any specific intellectual property that Rapid-Torc claimed to own.  The

schedule contained a list that generally referred to "drawings," but that hardly shows that Hytorc

knew in the bankruptcy proceeding that Rapid-Torc had asserted its ownership of the specific

drawings in issue in New Jersey.  The record shows that Rapid-Torc had ordered other products from Triad and Nazareth that required drawings, and none of these orders or transactions involved Hytorc.  (App. at 1108-09).  The Purchase Agreement did not put Hytorc on notice of Rapid-Torc's claim to the disputed drawings in the bankruptcy.

The Houston bankruptcy court also found that in the New Jersey litigation, Hytorc had alleged that Rapid-Torc had stolen designs from Hytorc.  The complaint in the New Jersey litigation makes no such allegation.  Instead, it alleges that Triad and Nazareth began manufacturing tools for Rapid-Torc based on drawings already in Rapid-Torc's possession.

In addition to these erroneous findings, both central to the orders challenged on this appeal, the bankruptcy court ignored other evidence in the record that supports Hytorc's position. Schedule B requires debtors to disclose their personal property.  One of the required disclosures is whether the debtor owns "[p]atents, copyrights, and other intellectual property."  The form instructs debtors to "[g]ive [the] particulars" of this intellectual property. (App at 42).  The Bankruptcy Code includes trade secrets within the definition of intellectual property.  § 101(35A).  Rapid-Torc indicated that it had "none" and listed no trade secrets in the space provided on the Schedule B it filed in the Houston bankruptcy.  Rapid-Torc did not list trade secrets on Schedule B or on any of its other schedules.  "[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets . . . ." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004).  A party's failure to disclose an asset in bankruptcy is, in essence, a representation that the asset does not exist.  *Cf. id.* (failure to disclose a legal claim is an affirmative representation that the claim does not exist).  The bankruptcy court recognized that Rapid-Torc failed to disclose this

trade secret but did not reconcile this failure with its overall finding or with the legal conclusion that followed.

The bankruptcy court also disregarded testimony that undermines its factual conclusions. For example, William Thomas, Atlas's representative at the bankruptcy hearing, testified that he doubted that the designs that Atlas acquired in the bankruptcy were the same as the designs that Hytorc sent to Triad and Nazareth.  (App. at 1099).  Thomas also testified that none of the drawings that Atlas claims to have acquired were in Rapid-Torc's possession; rather, Atlas acquired the drawings from Rapid-Torc's vendors.  (App. at 1113).

The record does not support the bankruptcy court's finding that the ownership of Hytorc's trade secrets was at issue in the bankruptcy and that Hytorc knew it was at issue.  Because this factual finding was the foundation for the court's conclusions of law on both jurisdiction and on the merits of enjoining the New Jersey lawsuit, the error was not harmless.  The bankruptcy court's decision must be reversed.

> **b.     The bankruptcy court mischaracterized its own orders and issued erroneous jurisdictional findings.**

The bankruptcy court's errors in characterizing its own proceedings and orders made its second asserted basis for jurisdiction—a bankruptcy court's postconfirmation jurisdiction to enforce its own orders—inapplicable.  The bankruptcy court correctly stated the rule that the court has jurisdiction to enforce its own prior orders.  *See In re Lothian Oil, Inc.*, 531 F. App'x 428, 436 (5th Cir. 2013) (citing *Travelers Indem. Co.*, 557 U.S. at 151).  But the mere fact that a party asserts that another party's actions violate the bankruptcy court's orders does not give the court jurisdiction over a lawsuit pending in another court.  Instead, the court may only act if its own earlier order prohibited

the offending party's current conduct.  *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 590 (5th Cir. 2008).

The bankruptcy court's assertion of jurisdiction over the New Jersey claims was also improper because it was based on an erroneous view of the facts.  The New Jersey litigation cannot fairly be characterized as an attempt to relitigate the terms of the Rapid-Torc bankruptcy.  Rapid-Torc did not assert ownership of the drawings or designs at issue in New Jersey during the Houston bankruptcy.  Indeed, Rapid-Torc specifically represented in the Houston bankruptcy that it did not own any intellectual property or trade secrets that it was selling to Atlas in the Purchase Agreement that the bankruptcy court approved in the Sale Order.  Nothing in the record supports the bankruptcy court's finding that Hytorc's designs or drawings passed to Atlas in the acquisition.  Those designs and drawings simply did not figure in the sale or in the bankruptcy proceeding, at all.  As in *Seven Seas*, the New Jersey litigation was not a bad-faith effort to undermine the bankruptcy Plan.  Hytorc's position in the New Jersey litigation violated no bankruptcy court orders.  The bankruptcy court had no jurisdiction to enjoin Hytorc from proceeding with the New Jersey claims or to resolve those claims on the merits.  *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 590.

> **c.** **The bankruptcy court's factual errors make its legal conclusions on the effect of the Settlement Agreement, claim preclusion, and judicial estoppel erroneous.**

Even if the bankruptcy court had jurisdiction to resolve the merits of the New Jersey litigation by determining that the Settlement Agreement, claim preclusion (res judicata), and judicial estoppel barred recovery, reversal is required because those determinations were themselves erroneous.

The bankruptcy court concluded that the Settlement Agreement it confirmed when it issued the Sale Order did not specifically release Triad and Nazareth from liability for making tools for

Rapid-Torc directly rather than through Hytorc.  The bankruptcy court nonetheless concluded that the Agreement operated to waive Hytorc's claims arising out of, or to, the drawings at issue.  Neither the bankruptcy court nor the parties cited case law.  Atlas does not brief any arguments to defend this conclusion on appeal.  The only reason the bankruptcy court identified to support this conclusion was Hytorc's purported knowledge that Rapid-Torc had asserted in the bankruptcy that it was the owner of the drawings and designs, which is erroneous and requires reversal.  No evidence showed that Hytorc knew during the bankruptcy that Rapid-Torc was asserting ownership over the drawings and designs.  Hytorc's acquiescence to the Settlement Agreement and overall bankruptcy Plan did not operate to waive its right to assert its ownership of those drawings and designs in the New Jersey litigation.

The bankruptcy court's finding that the Confirmation Order precluded the New Jersey suit through claim preclusion (res judicata) is factually and legally erroneous.  Res judicata is an affirmative defense that a party must plead.  *Sua sponte* invocation of the doctrine is improper unless one of two narrow exceptions is present.  *Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269, 281 (5th Cir. 2001).  The first exception permits a court to dismiss an action on the basis of res judicata on its own if the actions were brought before the same court and dismissal would serve judicial economy.  *Id.*  The second exception applies only when the record before the court in the second action contains every fact necessary to conclude that the action is precluded, and all of those facts are uncontroverted.  *Id.*  Neither exception is present here.  To state the obvious, the New Jersey action was not filed in or pending in the Southern District of Texas.  Nor does the record show uncontroverted facts.  The bankruptcy court's *sua sponte* invocation of res judicata principles to bar Hytorc's suit was improper.

The bankruptcy court's ruling was also substantively erroneous. A claim is precluded by the judgment in an earlier case if four conditions are met: (1) the parties are identical in both suits; (2) a court of competent jurisdiction entered the prior judgment; (3) the judgement was a final judgment on the merits; and (4) the same claim or cause of action is involved in both cases. *In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010). The bankruptcy court found that all four elements were present. Hytorc concedes that the second and third factors are present, but argues that the bankruptcy court erred when it found that the parties were identical and the same claims were in play. The court addresses only the first element, because the bankruptcy court's error there is sufficient to require reversal.

The bankruptcy court found that the parties were identical as between the bankruptcy proceeding and the New Jersey suit. The bankruptcy court relied on the fact that Hytorc, Triad, and Nazareth had all participated in the bankruptcy. This is not a sufficient basis to establish the identity of parties as between the first and second suit for res judicata purposes. Preclusion operates only when the parties to the second suit were adverse to one another in the first suit. Hytorc, Triad, and Nazareth—all unsecured creditors—were in effect coparties in the Houston bankruptcy court, adverse only to Rapid-Torc. A party that does not litigate against a coparty is generally not precluded by the judgment in that suit from filing a later action against that coparty, even if the claim arises from the same transaction or occurrence in both suits. *E.g.*, *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 523 (5th Cir. 1996) (party's claim against past codefendant not precluded, because the codefendants did not litigate against one another in the prior suit); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 38 (1982) (preclusion only applies between coparties when they were formally or factually adverse in the prior action). *Cf.* WRIGHT & MILLER, 6 FED. PRAC. & PROC. CIV.

23

§ 1431 (3d ed.) (res judicata does not bar assertion in a second suit of a claim that could have been brought as a crossclaim in the first suit).

Bankruptcy proceedings are no different. When cocreditors do not litigate against one another in the bankruptcy proceeding, their claims are not precluded by the eventual entry of a confirmation order. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 199-201 (3d Cir. 1999) ("[I]n general, a creditor who does not raise a claim against another party to the bankruptcy proceeding cannot be precluded from later asserting a claim.").[3] Hytorc was not adverse to Triad or Nazareth in the bankruptcy proceeding. The fact that the three were all present in the proceeding as unsecured creditors is not sufficient for res judicata.

The bankruptcy court also reasoned that Triad and Nazareth were in privity with Rapid-Torc, because "[Rapid-Torc] was in a position to adequately protect" their interests. Privity is the only basis on which Atlas defends the bankruptcy court's conclusion that the parties to the New Jersey suit are identical. The bankruptcy court's privity ruling was error for two reasons. First, the privity theory on which the bankruptcy court relied (and which Atlas adopts) is inapplicable when a party to the first litigation sues a nonparty—or, as here, a party to which it was not previously adverse. Rather, it is a doctrine that, in certain narrow circumstances, bars a plaintiff who was not a party to the previous litigation from bringing a subsequent suit, on the ground that her interests were adequately protected in the past suit.

Second, even assuming that virtually representing a defendant in a prior suit was a permissible basis for finding identity of parties, the parties are still not identical or in privity to satisfy claim

---

[3] *CoreStates* did ultimately conclude that a creditor's suit against another creditor was precluded by confirmation of the bankruptcy plan. But that was only because the creditor had entered an objection to the bankruptcy plan that rendered it adverse in fact to the other creditor and also dealt directly with the subject of the second suit. That did not happen here.

preclusion.  Privity through virtual representation is narrow.  *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992).  It "requires more than a showing of parallel interests—it is not enough that the non-party may be interested in the same questions or proving the same facts."  *Id.*

Atlas argues that in the bankruptcy proceeding, Rapid-Torc protected Triad and Nazareth's interests by: "(i) correctly listing the amount of their unsecured claims on Schedule F; (ii) identifying them as 'Key Suppliers' and ensuring that they would be paid in full for [Rapid-Torc's] outstanding purchase orders; and (iii) confirming a Plan pursuant to which Nazareth and Triad were paid in full."  This argument is unpersuasive.  The question is not whether Rapid-Torc protected Triad and Nazareth's interests in some abstract sense.  The question is whether Rapid-Torc's position in the bankruptcy was so similar to the position in which Triad and Nazareth find themselves in the New Jersey suit as to have been their virtual representative in that suit.  Rapid-Torc could not possibly have been so situated, because it was the beneficiary of Hytorc's universal settlement and release of claims.  Rapid-Torc faced no liability for its alleged participation in the machine shops' alleged wrongdoing.  Rapid-Torc therefore was not a virtual representative for Triad and Nazareth.  Because there is not identity of interests or positions, there is not identity of (adverse) parties between the bankruptcy and the New Jersey suit, and the bankruptcy court's conclusion on res judicata was erroneous.

The bankruptcy court also concluded that judicial estoppel barred Hytorc's New Jersey suit.  Judicial estoppel is an equitable doctrine that allows a court to "prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding."  *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012).  Three factors typically control the analysis: (1) whether the party is asserting a legal position plainly inconsistent with a prior position;

(2) whether the court accepted the prior position; and (3) whether the party purposefully adopted the inconsistent position. *Id.* The bankruptcy court reasoned that estoppel applied because: "(1) Dynamic/Hytorc intentionally failed to raise its ownership claims to [Rapid-Torc's] intellectual property during the bankruptcy and it now claims [Rapid-Torc's] designs are its trade secrets; (2) the [purchase agreement] and reorganization were integrally related to the Court's approval of the Dynamic/Hytorc/Atlas settlement; (3) Dynamic/Hytorc purposely accepted payment from Atlas, while post-confirmation, it intended to sue Atlas's suppliers . . . ." For the reasons explained earlier, that reasoning is erroneous. Hytorc never represented to the bankruptcy court that the drawings and designs at issue in the New Jersey litigation were not its property. Its current assertion that the drawings are its property is not inconsistent, and judicial estoppel is not proper.

## III.   Conclusion

The bankruptcy court lacked jurisdiction over this dispute. Even if it had jurisdiction, the factual findings that drove its analysis and the conclusions of law were clearly erroneous. The bankruptcy court's order is reversed and Atlas's motion to enforce is denied. The substance of this dispute is properly litigated in the New Jersey action. Hytorc may continue to prosecute that suit in New Jersey.

SIGNED on September 30, 2016 at Houston, Texas.

Lee H. Rosenthal
United States District Judge